Ruffin. C. J.
 

 It is not deemed material to notice any difference between the statements of the defendant and the witness. There is but little doubt, that both of the parties to the deed have been disappointed in the result. But, as the deed expressly puts the plaintiff and the defendant on the same footing, it is clear, that, if it be bind-, ing as a contract, it cannot be varied upon evidence, in the manner urged by the defendant. It is said, however, that conveyances of this kind are of a peculiar nature, and that the grantor can direct a different appropriation of the effects from that prescribed in the instrument; and, indeed, as the plaintiff did not execute the deed nor was privy thereto, that he cannot claim the benefit of it. In
 
 *466
 

 Wallwyn
 
 v.
 
 Coutts
 
 3 Mer. 707, there is a very short note of a decision by Lord Eldon, on the authority of which other Judges have proceeded to lay down a doctrine to the extent stated; which is a very remarkable instance of important legal principles being deduced from a very inadequate source. As the case is there reported, two noblemen conveyed land to trustees upon a trust for the payment of specified debts, without an agreement of any creditor, and without any consideration moving from any one of them. Upon a bill by a creditor for relief under the deed, Lord Eldon refused a motion for an injunction against a misapplication of the fund, saying only, as reported, “that the trust being voluntary, the Court could not enforce it against the Duke and Marquis, who might vary it as they pleased.” The report is very unsatisfactory, not stating the provisions of the deed particularly ; and the reason assigned is so clearly erroneous, that there can be little doubt, that it does not correctly state that which did influence Lord Eldon, whatever it might be. For, there being an executed conveyance, which passed the legal estate to thetrustees,it was altogether immaterial, whether the trusts were voluntary or not. The trustees would be bound to perform the trusts, though voluntary, because they took the estate on those express trusts, and, therefore, could neither keep the estate, nor convey it to another, exonerated of the trust. It was so held by Lord Tiiurlow in
 
 Coleman
 
 v.
 
 Sorrel 1
 
 Ves. Jr. 50, and expressly laid down by Lord Eldon himself, a few
 
 years before, in Ellison
 
 v.
 
 Ellison
 
 6 Ves. 656, In distinguishing between the rights of different volunteers to call for the execution of trusts, he said, if one needs the assistance of the Court of Equity to constitute him a
 
 cestui que
 
 trust. he cannot have it, if the instrument be voluntary, as upon covenant to convey : but if there be a legal conveyance effectually made, though it be voluntary, the equitable interest will be enforced. For, he adds, where an actual transfer
 
 *467
 
 is made, that constitutes the relation of trustee and
 
 cestui que trust,
 
 though without a good or meritorious consideration, and voluntary. The distinction seems to be perfectly sound. Indeed, it only applies a principle, which was before familiar at law, in respect to the creation of uses with and without a consideration: it being held, as explained by Mr. Hargrave, that in conveyances under the statute of uses a consideration is necessary, because they are in truth bargains or covenants, which will not raise a use, if voluntary, to which the statute can transfer the legal estate ; but that, in those at common law, as a fine or fe offment, a consideration is not necessary, because they operate by transmutation of possession to pass the land itself from the grantor without the interposition of equity, and the grantee, thus receiving it, coupled with a use, must hold it to that use, whether voluntary or not; and then the statute would transfer the possession to the use. It would be against conscience for the fe-offee to keep the estate for himself: and there could be no use resulting to the grantor, because the deed disposed of it to another. Therefore the use must belong to him, whoever he may be, for whom it was declared. The principle is, that uses and trusts annexed to a perfect conveyance of the legal estate will be sustained, but that a trust will not be raised against the owner of the legal estate upon an agreement with him, unless there be a valuable or good consideration. Now, in
 
 Wallwyn
 
 v.
 
 Coutts,
 
 it is assumed, that the deed was effectual at law. Whether as a fe offment, or as a bargain and sale, expressing a consideration as passing from the trustees, or as a lease and release, is not material. The legal title was vested in the trustees, and it followed from the rule of the common law as to uses, and from the consequent doctrine of equity as to trusts, that any trusts coupled with the estate in the conveyance, or declared by the trustees, ought to be executed, though gratuitous: and it is not seen, how trust» '
 
 *468
 
 for creditors, supposing creditors, who are not parties to the deed, to be but volunteers, can be distinguished from trusts for children or others not founded on a valuable consideration. It is most questionable, therefore, whether the report correctly attributes that as a reason of Lord 'Eldon’s judgment. That it is erroneous in that respect is thé more probable, since subsequent Judges, who approved of the decision, have undertaken to assign for it other and very different reasons. It has been said, that the true ground of the decision was not that a
 
 cestui que trust,
 
 under a voluntary conveyance, had not the right against the grantor, but that, in the view of the Court, the relation of trustee and
 
 cestui que trust
 
 never existed ■between the trustee and creditors, but that the grantor was himself the only
 
 cestui que trust;
 
 and that what is ■said in the deed about paying debts is not for the benefit of the creditors, but the grantor’s own convenience, and ‘hence he had a right subsequently to direct the application of it, as his own trust fund.
 
 Garrard
 
 v.
 
 Louderdale,
 
 3 Sim. 1, and upon appeal 2 Russ, and Mylne 451.
 
 Bill
 
 . v.
 
 Cureton, 2 Mylne
 
 v.
 
 Keene,
 
 511. In the opinion given by Sir Lancelot £¡íiadwell in the former case, he states the provisions of the deeds in
 
 Wallwyn
 
 v.
 
 Coutls,
 
 and, as the report of it in Merivale is so defective, Mr. Simons, 3 vol. 14. sets forth the bill and the several deeds particudarly, and ,the order made by Lord Eldon. It appears thereby, that the estates conveyed belonged to the Duke ' of Marlborough, and that, after reciting that the Duke’s 'son, the Marquis of Bledford, had granted certain annuities, and that the Duke was desirous of relieving him from : the payment of them and also to make provision for his ‘-son, he, the Duke, in consideration of natural love and affection'for his son, &c , conveyed to the trustees in fee 'certain lands, upon trust to raise money sufficient to re- ' purchase the annuities granted by the son, and then in 'trust,'if the trustees should think proper, to raise any
 
 *469
 
 further sum, which they might decree expedient, to pay debts then due from the Marquis, that the trustees should consider advisable to be paid: and, for the purpose of raising such sums, it was declared, that the trustees should, at such times as to them should seem proper, sell the lands ; and that they should in the meantime mortgage any part of them, and stand possessed of the money raised thereby upon trust to pay off the annuities, and then upon trust, if the trustees should think proper, but not otherwise, and at the request of the Marquis, to pay such of his debts as they should consider advisable to be paid, and upon the further trust to pay to the Duke any surplus of money raised in his life time, and to pay any surplus raised after his death to the Marquis; and, subject thereto, the trustees were to stand seized in trust for the Duke for his life, and then for the Marquis in fee. By subsequent deeds between the same parties and reciting the first and certain acts done under it, other trusts were declared. One of the annuitants filed a bill, on behalf of himself and the others, praying that the fund should not be applied to the purposes of the substituted trusts, until the annuitants specified in the first deed were satisfied: and Lord Eldon refused an injunction. But the one case came before that great Chancellor, which called for his opinion on this point, and therefore it cannot be said positively, whether he meant to confine what he did to the particular terms of that deed and circumstances of that case, or proceeded on the general principle which has been since laid down on the authority of the decision. But it would seem from the incongruity of such a principle with his judgment in
 
 Ellisonv. Ellison,
 
 that he must have gone on the peculiar facts of that case. It is apparent, that the position rests upon a supposed intention of the grantor to make a conveyance for his own convenience or pleasure, because not executed at the instance or with the concurrence of
 
 *470
 
 a creditor: and it was then considered, that, the thing being done in that way and to that intent, creditors cannot claim benefit under it or interfere with the grantor’s arrangements. Now, it may be said upon that deed, though with some scruples, that it owed its existence to an intention of that sort. The estate belonged to the father, while the debts were those of the son, and the father 'reserved to himself a life estate, subject only to the discretion of his trustees to raise a fund by sale or mortgage for the payment of the debts, when and if they thought it proper and advisable. It is manifest then, that there was no consideration to support the deed against purchasers from the father, or his creditors, because it was thought voluntary, in every sense of the term. There was then color for regarding the transaction, as an appointment by noblemen of persons to act, in the name of trustees, stewards in fact and attornies in the management and sale of large estates, under their control, indeed, but without troubling the owners about them, until they should choose to recall the appointment or make other dispositions of the estates, and in the course of such management to pay such debts as the grantors, or the trustees, might prefer. It is to be observed, that there is nothing on the face of the deed or in the case to raise a suspicion, that the debts were not perfectly secure to the creditors, independent of the deed. The father does not saj', he was desirous of securing the payment of his own debts, nor even those of his son, with any reference to the interest of the creditors: but, on the contrary, the motive for the deed was the father’s desire to relieve his son from paying his debts, to promote the son’s convenience and happiness merely, apart from the claims of his creditors. Viewed in that light and with an understanding, founded on experience and observation, of the probable purposes of persons of such fortune and rank as the parties to that deed, much more perfect than can be. formed here, it is
 
 *471
 
 very possible, that Lord Eldon was correct in not , considering the deed to have been intended to vest rights in the son’s creditors, independent of the continuing pleasure of the father and son — if, indeed, such was the reason that actuated him. But it. seems impossible to infer such an intention, when an insolvent person, or. one greatly embarrassed, assigns his estate expressly as an immediate security for particular debts or for his debts generally. and this is the means, through sales by the trustees positively prescribed, of paying the debts as far as the effects will suffice: for the inference is directly against the express declaration of the deed. Such a grantor plainly makes the deed, not to promote his own convenience, merely or chiefty, but to discharge a duty of conscience by making a positive provision for the payment of hi,S debts in convenient time, as far as he is able ; and it cannot be presumed, that he did not, from the beginning, inr tend a benefit to the creditors. To what end shall a debtor retain a subsequent control over the property ?■— To allow him to have it, by virtue of a ,doctrine of cf|M>* ty, is substantially to. insert in the deed a general power of revocation and appointment: the effectof which would be to render it void against other creditors.
 
 Farback
 
 v.
 
 Masbury, 2
 
 Vern. 510.
 
 Cannon
 
 v.
 
 Peebles, 4
 
 Ired. 207. As an insolvent cannot honestly revoke a security, which he has once provided for his creditors, an-.intention to do so, or to reserve a power to do so, is not to be imputed (o him, as a reason for construing his deed in opposition to its words and his duty. There seems, indeed, to be no more reason, why his deed, when duly executed to pass the legal estate, sho.uld not be as obligatory on him and enure to the behalf of the creditors as much, as a devise in trust for creditors is binding on his heir or devisee. It is true, the devise, is a bounty. But we have already seen, that when the deed is effectual to vest the estate in the trustee, a gratuitous trust is valid. But a devise for
 
 *472
 
 payment ot debts is not received simply as a bounty: for if debts and legacies be both charged on the estate, undoubtedly the creditors are to be satisfied first, because in their nature they are of higher obligation, and it is considered that the testator, in providing for them, was but performing an act of honesty. Admit then, that the creditors, when entering into no covenant, and not privy
 
 to
 
 the execution of the deed, are volunteers : yet they may stand upon the words ol the instrument, and upon ihe honesty of the trust in their favor, as against the debtor and trustee, and upon its honesty and priority as against creditors provided for in a subsequent deed. Accordingly, there arc cases in England, in which such trusts were executed at the instance of the creditors. In
 
 Langlon
 
 v.
 
 Tracy,
 
 2 Ch. Rep. 30, the trust was for payment of debts generally, naming no creditor, and the deed made voluntarily. It was argued, that for those reasons it was revocable by the grantor : but Lord Keeper Bridgman assisted by the Judges, held clearly, that the debts were a just and honest consideration, and the creditors might, as ces•
 
 tuis que trust,
 
 compel the execution. In
 
 Leech v. Leech,
 
 Chan. Cases
 
 249,
 
 it-was held again, first, that a trust created by deed is supported by that consideration, and, secondly,'that a trust for payment of debts generally is
 
 good
 
 against the heir, though no
 
 creditor be
 
 a party to the-deed. - This last consideration, that is, the operation of such a deed after the death of the maker, is very material in determining its proper construction from the beginning: for, it can hardly be supposed that the grantor intended, that his heir might frustrate his settlement, and yet, if the power of revocation he impliedly in the ancestor, it must extend to the heir. There is also the still later case of
 
 Small
 
 v.
 
 Ondley,
 
 2 P. Wms. 427, when an assignment by an insolvent to a creditor to secure his debt was held good against assignees in bankruptcy, although the deed was made without the privity of the creditor.
 
 *473
 
 There are, moreover, many instances, in which assignments for payment of debts have been sustained against purchasers and other creditors, as founded on a valuable consideration, and, therefore, not fraudulent, though the secured creditors were not privy to the deed.
 
 Stephenson
 
 v.
 
 Haywood,
 
 Finch’s Rep. 310.
 
 Marbury
 
 v.
 
 Brooks,
 
 7 Wheat. 556. Now, that cannot be, if the creditors cannot enforce the trust, but it is with the debtor to allow or forbid its execution : for it would be strange, indeed, if a creditor could not bring an estate to sale under his execution, which the defendant in the execution could control through his trustee : especially, since the statutes authorising executions to be done on trusts. It may be a circumstance, on which a judgment creditor may the more readily impeach an assignment as fraudulent, when it is made of the debtor’s own accord and without the knowledge of the creditors, whom it purports to secure. But that does not concern the question between those creditors and the grantor and trustee. As between them, the terms of the deed being plain, its purpose, as a security for a true debt, being perfectly just, and the efficacy of the deed, as a security for the debt being indispensable to its honesty and validity to any purpose, the equity and necessity of holding the trust for the creditors obligatory seem to be almost above question : and one is-led almost irresistibly to think, that Lord Eldon meant to confine himself in
 
 Wallwyn
 
 v.
 
 Coutts
 
 to the particular circumstances of that case, and not to lay down a general proposition, that, unless the creditors are privy to a: conveyance upon trust to pay debts, they are but volunteers, and for that reason they cannot as
 
 cestuis que trust
 
 enforce the trust. It must be admitted, however, that, whether he intended to be so understood or not, there have been so many other cases, professing to go on his authority, in which the Judges have laid that down as a general principle, that probably it is to be considered now the settled rule in England.
 

 
 *474
 
 But, whatever the Courts in that Country may think themselves bound to hold on this point, it is certain, as was said in
 
 Walker
 
 v.
 
 Crowder
 
 2 Ire. Eq. 478, that the doctrine, deduced from the note of
 
 Wallwyn
 
 v.
 
 Coutls,
 
 has not been adopted in this State ; nor, is it believed, in this Country. No instance has been found ofeven an intimation, that a creditor, provided for, is not entitled to insist, as against all persons, on the full benefit of the trust as expressed in the deed. In the circumstances of this country, and regard being had to the pecuniary condition and general purposes of those who make assignments for creditors, it is plain, that the principle is most applicable here, on which the older English cases proceeded. It has been considered among us, when the grantor says in the deed, that he makes it for the purpose of securing and paying his debts, that he in fact intends the debts to be thereby secured and paid There have, accordingly, been many instances, in which such trusts have been executed at the instance of creditors, and the deeds upheld also, as valid conveyances, against third persons, upon the ground of the obligation created thereby .on the trustee to satisfy the debts out of the trust property. In
 
 Nicholl
 
 v.
 
 Mumford,
 
 4 John. C. C. 522, Chancellor Kent laid it down, that, if an assignment be to trustees for the payment of debts and the legal estate vests in the trustees, Chancery will compel the execution of the trusts for the benefit of the creditors, though they be not parties, nor at the time assenting to the conveyance. He had before held to the same purpose in
 
 Shepherd
 
 v.
 
 McEvers,
 
 4 John. C. C. 136, and
 
 Moses
 
 v. Murgatroyd, 1 John. C C. 129. In the case of
 
 Hulsey
 
 v.
 
 Whitney,
 
 4 Mason 206, Mr. Justice Story stated the doctrine thus : As to trusts created for the benefit of creditors, and to which they are not, technically speaking, parties, they are unquestionably valid, if the deed be made
 
 bona fide
 
 and pass the legal estate to the trustees; for it can be no ques
 
 *475
 
 tion, whether it is for a valuable consideration or notf because the debts due to the creditors constitute a valuable consideration in the highest sense, and the obligation of the trustee to perfom the trust, according to the provisions of the deed, is a sufficient consideration as far as he is concerned Similar views were taken of this matter, as supporting against an attachment an assignment, voluntarily made by a debtor to a trustee of his own selection, in trust for creditors without their privity, by Chief Justice Marshall in
 
 Marbury
 
 vs.
 
 Brooks,
 
 7 Wheat. 556, and yet more fully in the same case, when it came before the Supreme Court a second time, 11 Wheat, 78. He said, that deeds of trust are often made for the benefit of persons, who are absent, and even for those not in being. Whether they be for the payment of money, or for any other purpose, no expression of the assent of the persons, for whose benefit they were made, has ever been required as a preliminary to the vesting of the legal estate ; and such trusts have always beén executed on the idea, that the deed was complete when executed by the parties to it. He then proceeds to consider how the creditors not being privy to the execution may be evidence of fraud, and how that presumption maybe repelled. But, if
 
 bona fide,
 
 the deed is obligatory throughout In each of the cases at law, it is evidently assumed, that the creditor could, as
 
 cestui que trust,
 
 enforce the trust according to the terms of the deed ; and nei her of those distinguished Judges conceived it competent to the debtor and trustee to defeat the trust to any extent. In truth they plainly hold the contrary, since they put the validity of the deed, in point
 
 oí bona
 
 or
 
 malafides
 
 and of the sufficiency of the consideration, upon the ground, that by its execution the deed became complete and secured a benefit to the creditors. In the cases in New York the trusts were actually enforced in chancery at the suit of the creditors. There are other most respectable adjudications
 
 *476
 
 in equity to the same purpose. In
 
 Ward
 
 v.
 
 Lewis,
 
 4 Pick. 518, an insolvent debtor made an assignment to trustees to pay debts in a certain order, which the trustees accepted. Afterwards the debtor and some of the rcreditors compounded upon other terms, and the trustees ;applied the effects according to the new agreement. Yet it was held, that a creditor secured in the first deed, though not privy to its execution, had a right to affirm the trusts ; and he had a decree for his debt against the .trustee, who had received and misapplied the fund. Two' years afterwards, under circumstances not at all favorable to the creditor, and although
 
 Wallwyn
 
 v.
 
 Coutts
 
 was cited, the Court gave a second decision to the same effect, .in a suit upon the same instrument.
 
 New England Bank
 
 v.
 
 Lewis,
 
 8 Pick. 113.
 

 In this State no question has been made on the point -before the present case, as far as recollected ; and there have been but few occasions, on which an observation has been made concerning it. In
 
 Walker
 
 v.
 
 Crowder,
 
 the remark was made, which has been already quoted ; and in
 
 Moore
 
 v.
 
 Collins,
 
 3 Dev. 126, where was a single creditor privy to the deed out of many secured in it, Judge .Hall said, the creditors secured had a right to be paid their debts, and, for that reason, that the deed of trust, made to effect that end, was not fraudulent.
 

 Upon the whole, therefore, the Court holds, upon the intrinsic soundness of the principle, the prevalent impression in the profession, and the course of the adjudications in the United States, that the relation of trustee and
 
 ■cestui que trust
 
 is.constituted by the execution of such a deed in favor of a creditor assenting at the time or in a reasonable time afterwards, and, indeed, that such assent is to be presumed unless the contrary be shown. Con.sequentiy, the trustee cannot, with or without the direction of the grantor, apply the fund to any other purpose, ;until the trusls of the deed are satisfied ; and therefore
 
 *477
 
 the plaintiff is entitled to the account and to have his proportion of the fund, if there be not enough to pay him in full.
 

 Per Curiam.
 

 Decree accordingly.