CASE 83—PETITION EQUITY—APRIL 9.

# Brannin, &c., v. Sherley.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

VOLUNTARY SETTLEMENT—UNDUE INFLUENCE.—A voluntary settlement or gift made by one who is competent to act for himself and understands what he is doing will be sustained by the chancellor, although there is no power of revocation, provided the transaction is the result of the grantor's own judgment and will. But the mere fact that one has made a gift of all his estate, without reservation or power of revocation, is a suspicious circumstance, and only slight proof "of mistake, misapprehension or misunderstanding" on the part of the grantor will be required to set aside the deed.

The owner of a valuable estate, immediately after arriving at age, conveyed his entire estate to his grandmother in trust, requiring her, by the terms of the deed, to pay to him the net annual income until his marriage, and after his marriage to pay the income to his wife and children, and upon his death to convey the property to them, if any survived him; if not, then to convey the property to his sister, and if she should be dead, then to her heirs on the side of her mother, who was a daughter of the trustee. The grantor was expending his estate in such an improvident manner as amounted to recklessness, and his grandmother and sister, who dominated his will when he was with them, induced him to execute the deed for the purpose of saving his estate. Soon after the deed was executed the grantor married, and his wife and one child are now living. The grantor, having abandoned his extravagant habits, now brings this action to cancel the deed. *Held*—That the instrument was the act and deed of the grandmother and sister, who were not even aware of its effect upon the rights of the grantor; therefore, the chancellor did right in setting it aside. If the extravagant and reckless habits of the grantor still continued the chancellor would hold the property, but would at least let him have the income for his support.

JOHN C. DOOLAN, GUARDIAN AD LITEM FOR ELIZABETH B. SHERLEY.

1. The fact that the deed is "degrading and humiliating" to plaintiff will not authorize the court to set it aside. Courts of equity will not enforce the strict rule of morality in such cases. (Story's Eq. Jur., sec. 308; Holmes v. Hill, 22 Neb., 433; Taylor v. Taylor, 8 How., 200.)

2. Conceding that the plaintiff was "importuned" to make the deed, the character of the conveyance is such that it must be supported as a

settlement of the estate in the family. Transactions between parent and child in the nature of a settlement of property rights are regarded with favor. (Story's Eq. Jur., secs. 309a and 337; Pomeroy's Eq. Jur , sec. 962; Hartopp v. Hartopp, 21 Beavan, 259.)

3. The mere fact that a relation of trust and confidence exists does not render the transaction *prima facie* void. (Findlay v. Patterson, 2 B. M., 76; McHarry v. Irvine's Ex'r, 85 Ky., 346; Jenkins v. Pye, 12 Peters, 253; Taylor v. Taylor, 8 How., 200.)

It is only where that confidence has been abused that the person confided in will not be allowed to retain an advantage he has gained at the expense of the confiding party. (Pomeroy's Eq. Jur., sec. 956; Gore v. Summersall, 5 Mon., 505; Sears v. Shafar, 2 Seld., 218.)

4. The influence resulting from attachment, or the mere desire to gratify another's wishes, if the party's free agency be not impeached, does not affect the validity of the act. (2 Minor's Inst. (3d ed.), 670; Simmerman v. Sanger, 29 Gratt., 24; Hale v. Cole, 31 W. Va., 576.)

5. In Toker v. Toker, 31 Beavan, 629, a deed executed under circumstances similar to those under which the deed in this case was executed was upheld.

SIMRALL & BODLEY FOR APPELLANTS.

No brief in record.

W. O. HARRIS FOR APPELLEE.

1. The deed should be set aside, because the testimony shows undue influence.

2. The settlement was without consideration, and contained no power to revoke or make changes as the changing circumstances of life might require. In such a case " very slight evidence of mistake, misapprehension or misunderstanding" on the part of the settler will be laid hold of to set aside the deed. (Perry on Trusts, 2d ed., sec. 104, note 2; Garnsy v. Mundy, 24 N. J. Eq., 243; Russell's Appeal, 75 Pa. State, 269.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Brannin C. Sherley, the appellee, being the owner of two lots of land in the city of Louisville, one lying on the south side of Market street, between Brook and Floyd, and the other lying on the south side of Market, between Fifth and Sixth streets, on the 11th of November, in the year 1886, conveyed

all this estate, including both lots and the improvements, to his grandmother, Elizabeth A. Brannin, to be held by her in trust, and controlled and managed by her as she might deem proper, requiring her, by its terms, to pay to him the net annual income until his marriage, and after his marriage to pay the income to his wife and children, and upon his death to convey his property to them if any survived him, if not, then to convey the lots to his sister, Bettie Sherley, if living, and if she should be dead, then to her heirs on the side of her mother, who was a daughter of the trustee, Elizabeth A. Brannin. The appellee married not long after arriving at age, and his wife is now living with one child, the offspring of the marriage. These lots of ground, with the improvements, are valuable, producing a handsome income for the support of the appellee's family.

The appellee instituted this action in equity in the Louisville Law and Equity Court on the 15th of November, in the year 1890, seeking to cancel the trust deed to his grandmother so as to give him control of his estate. The trustee, Mrs. Brannin, the wife of the appellee, and his child, Bettie; also his sister Bettie, and her husband, George W. Ewing, she having intermarried since the deed was executed, are all defendants and before the court.

The wife of the appellee answers and is desirous of having the title vested in her husband, and upon privy examination by the chancellor so declared. The infant daughter, Bettie Sherley, makes defense by her guardian *ad litem*, and so does the trustee, Mrs. Elizabeth Brannin.

The principal ground for canceling the conveyance is the exercise of an improper influence over him by his grandmother, the trustee, and his sister, by which, in the event of his marriage, he was deprived not only of the corpus of his estate, but of any interest whatever in the annual income for his support and maintenance. No power of revocation exists in the conveyance, and the only relief the appellee has, if any, is in a court of equity.

This is a peculiar character of case, as it is manifest from the testimony that the influence exerted over the appellee by his grandmother and sister was prompted alone by their affection for him, and their desire to prevent the wasting of an estate that, by reason of his extravagant habits, would soon all be gone, and the appellee reduced to poverty. The motive of the trustee can not be impugned, nor can that of his sister, but still the effect of the conveyance, that was *purely voluntary*, with no other consideration on his part than the desire to gratify the wishes of the trustee and his sister, is to deprive the appellee of all his estate. He had just arrived at age when this deed was made, had left the home of his grand-parents before arriving at age, expending his means in such a generous and improvident manner as amounted to recklessness, and on his return from a trip to China and Japan executed the deed. He was subject to the absolute influence of his grandmother and sister when about them. They dominated his will, and, in fact, it was necessary they should do so on account of reckless habits that he seems now to be rid of. He had no business experience whatever when the deed

was executed, nor did the parties to it comprehend
fully the nature and effect of the conveyance, because
all were unacquainted with such transactions. The
fact that the appellee divested himself of all title to his
property shows that neither the trustee nor the appel-
lee considered the legal effect of the instrument. The
sister and her husband, George Ewing, both answer
and consent to the cancellation. The appellee evi-
dently exercised no judgment or discretion in the
transaction. It was left to his grandmother and sis-
ter. At that time he would not have known a deed
from a will, but now that circumstances have changed,
and, with his family surrounding him, his eyes have
been opened to the business affairs of life, we perceive
no reason why the conveyance should not be canceled
and the title restored to the appellee. It is true that
the trustee has derived no immediate beneficial inter-
est from the conveyance, but if construed as in the
nature of a family settlement, it should be reasonable
and just, and where the contents of the trust or
settlement deprives the grantor of all his estate it
will take but slight testimony to induce the chan-
cellor to say that it was unreasonable. If the extrav-
agant and reckless habits of the grantor still continued
the chancellor would hold the property, but would, at
least, where the income was sufficient, let him have
it for his support.

In Villers v. Beaumont, 1 Vern., 100, it is said: "If
a man will improvidently bind himself by a voluntary
deed, without the power of revocation, this court will
not loose the fetters he hath put on himself, but he
must lie down under his own folly." This doctrine

has been greatly modified by recent decisions, and certainly was never intended to apply where the grantor was wrongfully advised, and did not know the legal effect of the act by which he was giving away his entire estate. The attorney preparing the deed wrote it as directed, and supposed the family with which the appellee was connected desired it written in that way, and the appellee understood what he was doing. The appellee was unmarried when he made the deed, and no moral or natural obligation then rested upon him to provide for the first takers, his wife and child, but under the influence of his grandmother and sister, who thought and acted for him, he deprives himself of his entire estate, not even retaining, in the event of his marriage, the income derived from it.

In Everitt v. Everitt, L. R., 10 Eq., 405, the court said : " It is very difficult indeed for any voluntary settlement made by a young lady so soon after she attained the age of twenty-one to stand, if she afterwards change her mind, and wishes to rid herself of the fetters that bind her in the disposition of her estate."

In Garnsey v. Mundy, 24 N. J. Eq., 243, the grantor having arrived at age without any business experience, and but little knowledge of her legal rights, made a conveyance of her estate in trust in a manner similar to the grant before us. It was made at the instance of and under the advice of her mother and uncle. The property was placed beyond her control, and although the motives of her mother and uncle were praiseworthy, as in this case, the grantor applied to a court of equity for relief, and the facts

leading to the conveyance having been shown, the chancellor canceled the deed. The influence exerted in that case, as in this, was injudicious and unwise, and over one whose will was subordinate to that of the grandmother, who, in conjunction with his sister, caused its execution. There can be no doubt but that a voluntary conveyance or gift made by one who is competent to act for himself, and understands what he is doing, where the transaction is the result of his own judgment and will, will be sustained by the chancellor, although there is no power of revocation. But a gift of all one's estate without any revocation or power of revocation would be of itself a suspicious circumstance, and aided by even slight proof "of mistake, misapprehension or misunderstanding" on the part of the grantor, will be sufficient to set aside the deed. Besides, in this case those who influenced or caused the execution of the paper were remotely, and the sister directly, benefited by the conveyance, because the appellee then having no children, the title was vested in his sister. Still we are satisfied that no desire for personal gain induced the execution of the deed. It was done, as we think the facts show, under a misapprehension of what the legal rights of the appellee were in relation to the estate, and in the earnest desire to save the brother's property.

The testimony satisfied the chancellor that the instrument was the act and deed of the grandmother and sister, and that they were not even aware of its effect upon the rights of the appellee. The chancellor has canceled the entire conveyance. This was right, leaving the grantor to make such an equitable settlement on his family as he desires, and this he seems to have done. Judgment affirmed.