CASE 30—ACTION BY BROWN ANDERSON AGAINST LOUISA A. KEMPER
　　FOR THE TERMINATION OF A TRUST.—OCT. 1.

# Anderson v. Kemper and Others.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS. AFFIRMED.

SPENDTHRIFT——TRUST—CREATION—CONSTRUCTION—PURPOSE—TERMI-
　　NATION—RIGHTS OF CESTUI QUE TRUST—REMAINDERMAN—
　　CHANGE—TRUSTEE—DISCHARGE—GROUNDS—INCOMPATIBILITY.

Held:　1. Plaintiff, who was a spendthrift, conveyed certain real
　　estate to his father by absolute deed. As part of the same trans-
　　action, however, a bond was executed by the father, binding the
　　obligors to pay plaintiff an annuity, and at his death to pay
　　$7,000 to plaintiff's heirs. The intent of the proceedings was
　　to divest plaintiff of the title to the property, but to preserve to

him the beneficial use thereof during his life, and to secure the value of the remainder to his heirs at his death. HELD, that such deed and bond, when construed together, created an express trust for plaintiff's benefit.

2. Where, by certain conveyances, to which plaintiff was a party as grantor, his property was conveyed to trustees for his benefit for life, and thereafter to be divided among his heirs, the fact that by reason of a change in plaintiff's habits he thereafter became competent to manage his affairs, and desired to do so, was insufficient to authorize a termination of the trust.

3. Where land was conveyed for the benefit of the grantor for life, remainder to his heirs, a subsequent instrument, in so far as it purported to change the beneficiary in remainder, was invalid.

4. Where a trust of certain lands provided that the grantor should receive an annuity of $500 per year, and on his death the property should go to his heirs, it was competent for such grantor during his life to change the annuity to one providing for the whole of the net income of the estate necessary for his support.

5. Where trustees have managed an estate, with strict fidelity and unusual ability, they will not be discharged because of mere strained relations between them and the cestui que trust, which were probably due to the cestui's own misconduct and misjudgment of the trustees.

6. Where trustees, by reason of an advancement of their personal funds, had become creditors of the trust, a judgment appropriating one-half of the net income to the repayment of such advancement, subject to the original trust to pay so much of the income as was necessary for the cestui's support, should be construed as only authorizing an appropriation to the trustees after a sufficient amount had been appropriated for the cestui's support.

JOHN ROBERTS, D. M. RODMAN AND SAMUEL CLEAVER, FOR APPELLANT.

## STATEMENT OF QUESTIONS DISCUSSED AND AUTHORITIES CITED.

1. The statute of limitation does not bar a subsisting and continuing trust. Sec. 2543, Ky. Stats.

2. A judgment on demurrer does not bar a subsequent suit based upon a cause of action. Birch v. Funk, 2 Met., 544.

3. Advice given by a chancellor to a trustee where the basis of the trust is not before him, is no justification of the acts of the trustee pursuant to such advice, nor will the approval of the acts of a trustee by the chancellor based upon such imperfect information relieve the trustee from liability, when the

Anderson v. Kemper and Others.

true state of the case is brought before the court of equity in a subsequent proceeding.

4. Lasting and permanent buildings made upon real estate ought not to be charged exclusively upon the income of a life tenant.

5. A trustee without express power has no right to borrow money to make permanent buildings on real estate land charge the income with exclusive expense.

6. The chancellor ought not to appoint trustees who are unfriendly to the beneficiary and whose interest it is to keep up the remainder at the expense of a life estate, especially where the remaindermen derive their title through the benevolence of the life tenant.

POINTS AND AUTHORITIES CITED.

Res adjudicata.   Maize v. Bowman, 93 Ky., 205; 17 R., 81; Pepper v. Donnelly, 87 Ky., 259; Birch v. Funk, 2 Met., 544.

Statute of limitations.   Beach v. Cummins, 13 Rep., 831; Schwartz v. Castlen, 22 Rep., 1063; Caldwell v. Hampden, 21 Rep., 793; Spalding's Heirs v. I. S. Reform, 21 Rep., 1107; Kerr on Fraud and Mistake, pp. 308-310 land notes; Same, pp. 155-6-7-164; 3 Redfield on Wills, p. 601; 2 Story's Equity, sec. 1520 (a); Angell on Limitations, 183-191; Adams' Equity, pp. 63-4; Mitchell v. Tyler, 20 Rep. (Ky.), 1250.

Dealings between fiduciaries and cestui que trust void.   Kerr on Fraud and Mistake, 158 and notes; Pomeroy's Eq. Jur., 956; Perry on Trusts, 2d ed., sec. 104; Willard's Eq. J., pp. 169-176; Schouler's Dom. Relations, sec. 389; Hill on Trustees, 159, 536; Brannin v. Sherley, 91 Ky., 455; Webster v. Bush, 19 Rep.; 2 Story's Eq., sec. 1316; Longest v. Tyler, 1 Duval, 193.

Remaindermen Sutton, &c., can not profit by conduct of trustees.   3 Redfield on Wills, p. 601; Thomas v. Hite, 5 B. Mon., 598.

WILKINS G. ANDERSON, ATTORNEY FOR APPELLEES.

(No brief for appellees in the record.)

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

Appellant had the title to certain unimproved city and rural property in Jefferson county prior to 1872, which had descended from his maternal grandfather.   It was supposed to be worth about $9,000.   In addition, he had about $5,000 of personal estate similarly derived, which went into the hands of his father, James Anderson, Jr., as his guar-

dian. The guardian settled with appellant, and paid him in full; indeed, overpaid him, as shown by the settlement made after appellant's manhood. James Anderson, Jr., had six children—five daughters and the appellant. He died July 1, 1882. He had been a successful business man. By reason of certain intemperate habits and disinclination to work or to engage in business, appellant soon squandered the personalty above mentioned, and was taking steps looking to the sale of his realty. According to appellant's own statement, he was not only a wild reckless young fellow then, but had neither the taste nor aptitude for business. He seems to have been almost oblivious of the serious affairs of life. It does not appear that this was because of deficient mind, but was rather a disinclination and a refusal to take interest in them. Probably with these characteristics in mind, as well as a remembrance of his recent experience, and an acknowledgment of his disqualification for managing with safety such an estate, appellant executed a deed conveying the above-named real estate to his father July 9, 1872. Certain it is, whatever may have been the moving consideration, that such conveyance by ordinary deed, conveying apparently the fee-simple title, was then executed by appellant. The recited consideration was $9,000 cash. It is now admitted that in fact the $9,000 recited as the consideration was not paid. Instead, James Anderson, Jr., with his daughter, Edmonia F. Anderson, as his surety, executed to Geo. W. Anderson as trustee for appellant, an annuity bond, binding the obligors to pay to appellant $500 annually, and at his death to pay $7,000 to his heirs. This agreement continued till July, 1877. From July, 1872, to July, 1877, the $500 provided for by the bond had been promptly paid to Brown Anderson. James Anderson, Jr., had in 1877 come to quite

Anderson v. Kemper and Others.

an advanced age.  He then prepared to make a will.  As
the result of a conference with certain members of the fam-
ily, including appellant, James Anderson, Jr., conveyed the
identical property which had been conveyed to him by ap-
pellant to three trustees, to-wit, Geo. W. Anderson, Ed-
monia P. Anderson, and Wilkins G. Anderson (the latter
a son-in-law and nephew to the grantor), to hold and man-
age in trust for appellant.  The terms and conditions of
the trust were:  (1) That the trustees, or the survivors of
them, might sell and convey the property and reinvest the
proceeds.   (2) That they should pay to Brown Anderson
(appellant), during his natural life, so much of the net rents,.
issues, and profits of the said lands or proceeds as might
be necessary for his support; the payment to be yearly,.
half-yearly, quarterly, or monthly, as his needs might re-
quire.  (3) If Brown Anderson should die with issue, then
such land should go to them in fee simple.   (4) If he should
die without issue, then the property should go to the law-
ful heirs of James Anderson, Jr.  Appellant, Brown Ander-
son, was named in this last deed as the party of the third
part, and signed and acknowledged it.  The trustees named
accepted the trust, and have been ever since executing it..
At the same time when this deed was made the bond exe-
cuted July 9, 1872, was canceled in consideration of this
settlement.  By his will, prepared at or about the same
time, James Anderson, Jr., directed his estate divided into
six equal parts.  After satisfying certain specific bequests,.
he gave to the same trustees a one-sixth part, the income
only of which was to be applied, as far as necessary, to the
support of appellant.   Touching this the will provided:.
"In no event or contingency shall said Brown have right
in or control over the principal of said one-sixth, or more
of the income than is necessary for his support."  At:

Brown's death this principal was to be disposed of exactly as was done in the deed of 1877. One of the trustees (Geo. W. Anderson) died some years ago. This suit was brought by appellant, Brown Anderson, against the surviving trustees, who are also the surviving executors of James Anderson, Jr.'s, will and against the devisees and heirs of James Anderson, Jr. A number of amendments were filed, somewhat obscuring the purpose of the original suit, but from all of them we think its scope was to (1) have the trust created by the deeds of July 9, 1872, and of July, 1877, set aside and annulled, and to have the property described in the last-named deed conveyed to appellant in fee simple; or (2) if that could not be done, then to have the fourth clause of the trust deed of July, 1877, set aside and held for naught; (3) to require appellees Edmonia P. Anderson and Wilkins G. Anderson to settle their accounts as trustees, and to pay over to appellant any balance income on the trust property; (4) to have the trustees removed, and another appointed in their stead; (5) to have certain settlements theretofore made by the trustees surcharged. "Such further and other relief as to equity belongs" was also prayed for.

Appellees took the position that no trust was created until the transaction of July, 1877. It is true the deed of July 9, 1872, was in form a conveyance of the fee simple title. But it did not contain the whole of the agreement between the parties. The bond executed simultaneously is as much a part of the transaction as if set out in terms in the body of the deed. The true effect and intent of that proceeding, as between the parties to it, was to divest Brown Anderson of the legal title to, but reserve to him the beneficial use of, that property. Its fixed value was to be accounted for by the grantee to a named trustee of the

grantor, and so paid that the full enjoyment of its use was insured to him during life, and that the value should go to his heirs at his death.   This construction was undoubtedly the one in the minds of the parties, for when the deed of 1877 came to be made, at a time when James Anderson, Jr., was preparing to fix up his own affairs finally, we find him ridding his estate of the burden of providing the annuity required by the bond of 1872, and of binding Brown's property alone with its payment.   So the transaction of July, 1877, confessedly creating a trust upon this identical property for the benefit of this identical beneficiary, was made to continue, although in somewhat altered form, the original purpose of the parties.   Furthermore, if James Anderson, Jr., had failed prior to 1877 to comply with the terms of the bond, the chancellor, upon an application of Brown Anderson, would have subjected that property to the execution of the trust stipulated in the bond.   We are of opinion that an express trust was created by the deed and bond of July 9, 1872 in behalf of appellant, and according to the terms of the bond.   Howard v. Howard, 60 Vt., 362, 14 Atl., 702; Sargent v. Baldwin, 60 Vt., 17, 13 Atl., 854.

Appellant seeks to have the trust effected by these several instruments set aside, on the principal ground that the purpose of the trust or the reason for creating it no longer exists and that, therefore, he should be reinvested with the title to his own property.   He says that the reason for creating the trust was because he was then dissipated, an inebriate; and that, to prevent his squandering his property, it was conveyed to be held in trust for his benefit. While it appears that appellaant was then an inebriate, and that now for twenty years or more he has been strictly sober, yet it does not appear anywhere that appellant's

bibulous habits were the cause or consideration for creating
the trust.   If the instruments creating it had recited the
reason, it would be clear that if that reason no longer ex-
isted, the property should be conveyed to the beneficial
owner.   Weakley, Trustee, v. Buckner, 91 Ky., 457; 13 R.,
37; 16 S. W., 130; Brannin v. Sherley, 91 Ky., 450; 12 R.,
977; 16 S. W., 94.   But neither do the instruments say
what was the moving cause for creating the trust, nor is
that fact otherwise established in the record.   Two of the
principal actors—James Anderson, Jr., and Geo. W. Ander-
son, the original trustee—are dead, as is the distinguished
attorney who prepared the papers of the 1877 transaction.
We are not authorized by the state of the record to say
that the reason or necessity which moved the creation of
the trust no longer exists.

Other grounds adverted to in argument, though not very
clearly or specifically set forth in the pleadings, are fraud
or mistake in the execution of the papers.   Of fraud there
is no evidence.   The evidence of mistake is too meager to
entitle it to any great consideration.   At best it is the
statement of appellant that he did not then understand the
instruments.   That he may not have foreseen everything
that has come to pass relating to his support from this
property is likely enough; but that he had sufficient mind
to comprehend the probable workings, as well as the gen-
eral effect, of the transaction, there can be but little doubt.
It was not provided in any of these papers for the revoca-
tion of the trust either by the settlor or by the *cestui que
trust*.   It is not claimed by appellant that such power of
revocation was to exist, and that by oversight or mistake or
otherwise it was omitted from the instruments as drafted.
Indeed, the terms of the instruments themselves seem to
contemplate that the arrangement would exist in whatever

event, during the lifetime of the settlor. "The party who makes a voluntary deed, whether of real or personal estate, without reserving the power of altering or revoking it, has no right to disturb it, and as against himself it is valid and binding, both in equity and at law." Stone v. King, 7 R. I., 358, 84 Am. Dec., 557; Bunn v. Winthrop, 1 Johns, Ch. (N. Y.), 329; Sargent v. Baldwin, 60 Vt., 17, 13 Atl., 854; Salisbury v. Bigelow, 20 Pick. (Mass.), 174.

Appellant introduced evidence tending to show that he was now competent to manage and control his own estate, and testified that he was specially desirous of doing so. In Falk v. Turner, 101 Mass., 494, a married woman brought suit to set aside a deed of trust, by which, before her marriage, she had conveyed all her property to a trustee, for her exclusive benefit during her life, reserving the power of appointment by will, or, in default of such appointment, the proceeds of the estate to be paid to her children living at her death and the issue of any deceased children in equal shares. It was said by the court: "The bill avers that she now desires to regain the possession and management of the property, and has the ability to manage it. Nothing appears in the case to raise doubt as to her ability, either at present or when she made the deed. But the ability of the *cestui que trust* to manage the property, or his desire to do so, has never been recognized as a ground for setting aside a trust." 1 Perry on Trusts, section 104; Ingram v. Kirkpatrick, 41 N. C., 463, 51 Am. Dec., 428. Although appellant testifies that he did not have the benefit of legal advice in the preparation of the papers creating this trust, he admits that he did talk to Hon. James Speed about it, and it is pretty clearly shown that Mr. Speed was present in the capacity of an attorney when the papers of 1877 were prepared and acted in their preparation. But it was held

in Riddle v. Cutter, 49 Iowa, 547, that the fact that the person making a voluntary settlement did not have independent legal advice did not warrant the setting aside of the trust, unless the beneficiary stood in some fiduciary capacity to the donor, or the trustee was benefited thereby. This was held in the case of a conveyance by a drunkard in trust for the support of his family. In this case the settlor was himself the chief beneficiary. In the trust as originally created the trustee derived no benefit from it. By the alteration of the terms in 1877 the substituted trustees took no greater interest than they had before (under the construction and correction herein given that instrument), and their interest in any event was contingent and inchoate. We are of opinion, upon authority, that a trust not revocable by its terms, understandingly entered into by the parties, and free from fraud, can not be revoked at the caprice or whim of any of the parties, without the consent of all. The authorities are equally clear and uniform that, where such a trust has been once created, it is beyond the power of the settlor to alter its terms or beneficiaries, save by the consent of the *cestui que trust*. Therefore the attempted change by the deed of 1877 of the ultimate beneficiaries, who were to take the remainder of the estate created by the first instrument of 1872 from the heirs of Brown Anderson to those of James Anderson, Jr., was invalid. Perry on Trusts, section 104; Ingram v. Kirkpatrick, supra; Ewing v. Warner, 47 Minn., 446, 50 N. W., 603; Ewing v. Jones, 130 Ind., 247; 29 N. E., 1057, 15 L. R. A., 75; Rife's Appeal, 110 Pa., 232, 1 Atl., 226; Howard v. Howard, supra; Hildreth v. Eliot, 8 Pick., 293; Hellman v. McWilliams, 70 Cal., 449, 11 Pac., 659. The *cestui que trust* who was entitled to the whole of the net income of the trust estate during his life may consent, where he is not under legal disability, to a

change of the terms of the trust, but not so as to affect the other beneficiaries. Therefore it was competent for appellant to have consented to change the annuity of $500 to one providing for the whole of the net income of the estate necessary for his support. Whether the change of the investment from personalty to realty made by the instrument of 1877 will be approved on a final settlement of the trust will depend upon the conditions existing when that event shall occur.

In view of these conclusions it is not necessary to notice certain pleas of limitation in the record.

In so far as this action sought a surcharging of the settlement of the trustees' accounts, there was no averment of any error or omission of the trustees to charge themselves properly in any of the settlements previously made, nor is there evidence of such error or omission. In the settlement made in this case by the trustees the transactions seem to have been particularly careful and clearly proper. The settlement is full and explicit and no specific charge is made of any irregularity therein.

Appellant complains at the treatment received at the hands of his trustees and charges that their relations are so strained that it is improper that they should be continued. So far as his treatment at the hands of his trustees is concerned, the record discloses that they have managed his estate with strict fidelity, and with unusual ability. It has increased in value and in earning capacity. It has been changed under the power of the deed from an unproductive estate to one that has yielded a support sufficient to have maintained appellant despite the fact that he has been unable to do anything toward his own support. This has entailed upon the trustees considerable labor, great vigilance, and on numerous occasions the advance-

Anderson v. Kemper and Others.

ment of their private means to the accommodation of appellant's wants. In this way, as well as by reason of certain needed improvements made upon the property so as to make it productive, the income of the estate, has been anticipated, and by the judgment of the court these excessive expenditures have been adjudged to appellee trustees as a charge against the income but subordinate to the support of the appellant. The relations between the trustees and appellant do not appear to be at all cordial. Yet it does not appear that the trustees have failed in any instance to provide appellant with every necessity that the estate would . afford—even more. They have kept him strictly within his income—as they should have done—save when, for some reason, the income was abnormally reduced for the time being—as by the property being without tenants, etc. More than a punctual, scrupulous administration of the trust is not required. It does not matter so much what was the state of feeling between the parties, so long as it did not interfere with a just and proper discharge of the fiducial duties. Appellant's own conduct and misjudgment of the trustees is doubtless responsible for much that he feels towards them.

It is complained that by the judgment the net income is so reduced as that it is insufficient to support appellant with even the bare necessities of life. We do not so read the judgment. While it authorizes the appropriation of one-half of the net income to the repayment to appellees of the several sums adjudged them in the action in the way of advancements, yet it is expressly adjudged that this is subject to the original trust; that is, the support of appellant. This means, of course, that if one-half of the net income should not be sufficient for his support, then he must

be supported out of the income, as far as it is possible, even to the postponement of appellees' judgment debts.

The judgment of the circuit court having been in accord with these views, it is affirmed.