CITIZENS FIDELITY BANK & TRUST COMPANY, Trustee, et al., Appellants,

v.

Nora Bullitt LEAKE et al., Appellees.

Court of Appeals of Kentucky.

June 26, 1964.

Raymond F. Bossmeyer, J. H. Gold, Louisville, for appellants.

S. Russell Smith, Smith & Smith, Louisville, for appellees.

WILLIAMS, Judge.

A chancellor of the Jefferson Circuit Court found that William Marshall Bullitt exercised undue influence upon his two daughters by inducing them to sign trust agreements naming the Citizens Fidelity Bank & Trust Company as trustee. From a judgment holding the trust agreements null and void ab initio, the Citizens Fidelity Bank & Trust Company has appealed.

Two days before her marriage in 1939, Nora Bullitt Leake executed a trust agreement naming the Citizens Fidelity Bank & Trust Company as trustee. Four or five days before her marriage in June 1942, Barbara Bullitt Christian executed a similar trust agreement naming the same trustee. By these two agreements the daughters of William Marshall Bullitt created discretionary trusts and sought to establish as the corpus of the trusts all their remainder interests in the estates of their grandfather, Oscar Iasigi, and their grandmother, Amy Gore Iasigi. The grandparents' estates were created by Massachusetts wills which left life estates to Mrs. William Marshall Bullitt, with remainder upon her death to her children. Mrs. Bullitt is still living, still receiving the income from the estate, and has testified in this action.

William Marshall Bullitt died in October 1957. Following his death, Mrs. Leake and Mrs. Christian notified Citizens Fidelity Bank & Trust Company of their intention to rescind and revoke the trust agreements. A declaratory judgment action initiated by Citizens Fidelity Bank & Trust Company resulted in the judgment heretofore mentioned.

The appellees contended the trust agreements should be set aside on three separate grounds: (1) They were executed by reason of undue influence exerted upon the daughters by their father; (2) they are purely executory and, since they lack a valuable consideration, they cannot be enforced against the daughters; (3) Mrs. Iasigi's will expressly prohibits the daughters from alienating their interests thereunder "by assignment or any other method"; therefore, the purported assignment of their interests is void. The chancellor found for the appellees under the first point raised. It will be unnecessary to consider the other contentions.

In Brannin v. Shirley, 91 Ky. 450, 16 S.W. 94, 12 Ky.Law.Rep. 977 (1891), we said:

" * * * the gift of all one's estate, without any reservation or power of

revocation, would be of itself a suspicious circumstance, and, aided by even slight proof 'of mistake, misapprehension, or misunderstanding' on the part of the grantor, will be sufficient to set aside the deed."

There the grandson, who was a spendthrift, conveyed certain property in trust to his grandmother, with the agreement that she would pay him the income from the property until he married. Upon his marriage the income was to be paid to his wife and children. Upon his death the principal was to go to his children or, if none, to his sister. This Court observed that "the grandson was subject to the absolute influence of his grandmother and sister when about them; they dominated his will, and in fact it was necessary they should do so, on account of his reckless habits that he seems now to be rid of." The influence exercised over the donor by his grandmother and sister was prompted by their affection for him and their desire to prevent him from wasting his estate. It was recognized that, although the grandmother and sister might benefit by the conveyance, no desire for personal gain induced the execution of the conveyance. Nevertheless, although the influence was exercised with a benign purpose, this Court considered it undue influence and set aside the conveyance with the observation:

" * * * where the contents of the trust or settlement deprive the grantor of all his estate, it will take but slight testimony to induce the chancellor to say it was unreasonable."

■■ In this case the chancellor made a detailed findings of fact and conclusions of law. Under our Rules (CR 52.01), findings of fact shall not be set aside unless clearly erroneous. As we pointed out in Byerly Motors, Inc. v. Phillips Petroleum Co., Ky., 346 S.W.2d 762 (1961), that rule does not require this Court to accept findings which are unsupported by the evidence, but it does place upon the party seeking to have such findings vacated the burden of showing they are clearly erroneous conclusions from all the evidence. If there is evidence of substance to support the findings of the chancellor, they will not be disturbed. Such evidence need not be conclusive beyond doubt but need only be such that upon consideration thereof reasonable minds might differ. To put it another way, if the evidence is such that the verdict of a properly instructed jury based thereon would stand, it is sufficient to sustain the finding.

The chancellor found that the influence exerted upon the daughters by William Marshall Bullitt, although benign, was sufficient to be classified as undue. He also found they were justified in waiting until after the death of their father before taking any action to avoid the instruments they signed. Although we might not have drawn the same conclusions from the evidence, nevertheless, if there is evidence of substance, the findings must be sustained. To that end we shall examine the situation existing at the time of the execution of the trust agreements as it was related by the witnesses to the chancellor.

The trust instruments were prepared under the direction of Mr. Bullitt, "one of the foremost attorneys in the State of Kentucky." Mrs. Leake was 23 years of age at the time she executed her trust agreement and Mrs. Christian was 22 years of age. At the time Mrs. Leake was "very nervous and highstrung because of her father's violent objection to her marriage." Mrs. Bullitt testified that Mrs. Christian was "light-hearted and indifferent to anything except her marriage" at that time.

Mr. Bullitt was statutory guardian of each of his daughters. At the time she executed her agreement Mrs. Leake had an estate of approximately $3,500 in cash and securities which was in the complete control of her father and guardian. He did not make final settlement of his accounts as guardian until after her marriage and she did not receive the property until many years later. Similarly, Mrs. Christian, at

the time she executed her agreement, had a personal estate of $5,500 in stocks and bonds, which also was in the complete control of her father as guardian. It was some time later that Mr. Bullitt made a settlement of this guardianship account and many years before Mrs. Christian received her property.

The dominance by the father over the daughters may be gleaned from excerpts from the testimony of the mother and the daughters. Mrs. Leake testified as follows:

"Q. Did your father tend to dominate your sister?

"A. Do I have to say a specific time that he dominated her?

"Q. What you have seen him do or what you know?

"A. He dominated all of us.

"Court: Objection sustained except as to Mrs. Christian.

"Q. Did your father tend to dominate Mrs. Christian?

"A. He tried to.

"Q. Was he successful?

"A. I would say in some ways, yes.

"Q. In business matters, property matters?

"A. Yes."

On cross-examination Mrs. Leake was asked:

"Q. When did your father die?

"A. In October 1957.

"Q. I want to ask you why you waited until after your father's death to attempt to cancel or revoke the trust instrument?

"A. Did you know my father?

"Q. Only by sight.

"A. Well, because every time we tried to do anything he objected so violently to everything we did, it was just like banging your head against a stone wall."

Mrs. Christian testified as follows:

"Q. To what extent, if any, did your father attempt to or succeed in dominating your sister?

"Judge Bossmeyer: Objection.

"Court: Overruled.

"A. He succeeded in certain specific things that happened and he attempted to dominate at all times."

Mrs. Bullitt testified as follows:

"Q. In your family, Mrs. Bullitt, and I mean your whole family, on whom did the members of that family depend for advice in regard to the management of their property and things of that nature?

"A. I don't think they depended; they were ruled.

"Q. By whom?

"A. My husband.

"Q. By ruled, what do you mean?

"A. He told them what to do and they did it."

No issue concerning limitations was raised by the parties and we conclude there was sufficient evidence to sustain the chancellor's finding that the daughters remained under Mr. Bullitt's dominance until his death. He maintained control of the property of the daughters long after they were entitled to possession. It is clear that each daughter's mental state at the time she executed the trust agreement was not conducive to an understanding of what the agreement contained. Thus the lack of a full knowledge of what they signed, coupled with the futility of attempting to rebuff a domineering father, was sufficient reason for waiting until after his death before taking action to avoid the instruments.

There was evidence of substance to support the finding of the chancellor that Mr. Bullitt unduly, if benignly, influenced his daughters to sign the trust instruments.

The trust agreements were executed as a result of the undue influence exercised upon the daughters by their father, and the chancellor properly held them null and void ab initio.

The judgment is affirmed.

MONTGOMERY and MOREMEN, JJ., dissenting.