# Frederick's Appeal.

1. A disposition of property to take effect after the grantor's death is testamentary, and therefore revocable.

2. A power coupled with an interest cannot be revoked by the person granting it, but it is revoked by his death, for a valid act cannot be done in the name of a dead man.

3. A grantor, reciting that in consequence of disadvantageous bargains, being old and feeble, having met with losses and being in debt, he was so troubled in mind as to be incapable to attend properly to business, and fearing that his affairs would fall into confusion and he lose his estate, to save himself from care and trouble, and further loss and destruction of property, conveyed all his estate to trustees to pay his debts and necessary expenses, support him for life, they submitting an account to him every year, and after his death divide the balance amongst all his children. *Held*, that this was a revocable grant.

4. The grantor afterwards executed a deed revoking the grant. *Held*, that by the exercise of their powers by the trustees before the revocation, valid rights vested, and the titles they conveyed could not be questioned.

5. As to the children named in the grant, the deed being founded on no consideration from the trustees, and being simply to promote the grantor's convenience and interests, it was at most a covenant for posthumous gifts, and as such *nudum pactum*.

APPEAL from the Court of Common Pleas of *Montgomery county*, by Charles Frederick, executor, &c., of Philip Nace, Sr., deceased.

The decedent, on the 29th of October 1853, made a deed to Tobias Nace, John Boyer and Thomas Scholl, of which the preamble is:—

"Whereas, I, Philip Nace, Sr., in consequence of certain disadvantageous bargains and undertakings, and being old and feeble, have meet with considerable losses, and being now indebted to a considerable amount, have become so much troubled in mind as to be incapable of attending properly to business, and having reason to fear, if this state of things should continue any length of time, that my affairs would not only fall in confusion, but would be in danger of losing my estate; and believing that the transferring of the entire management of my business to three discreet and reputable persons, would spare me much care and trouble, and save me from further losses and destruction of my property."

And by which for the "consideration of the premises and one dollar," he granted, &c., to Nace, Boyer and Scholl all his real and personal estate, in trust, to convert all into money, pay his debts and invest the residue, and from the interest, after deducting necessary expenses, to support the grantor during his life and submit a statement to him on the first Monday of April in every year, and in one year after his death pay the balance, together with the interest that may then have accrued, to his nine children. The deed contained a covenant on the part of the trustees to perform the trust, which was not executed by them, but at the bottom of

[Frederick's Appeal.]

it was a written acceptance of the trust, signed by them. Tobias Nace was discharged in 1854. On the 19th of February 1861, Philip Nace executed a deed revoking the deed of trust except so far as creditors were interested, of which Scholl and Boyer were notified. The trustees having filed their account, it was referred to an auditor, who found a balance of $2566.47 in their hands after paying debts and expenses, and his report was confirmed October 14th 1861. Nace claimed this on the ground that the deed had been revoked. But the court, October 14th 1861, decreed it to the trustees. Nace afterwards died, having by his will, proved September 29th 1863, bequeathed part of his estate for the use of his idiot son, Paul, and the remainder to the children of his deceased daughter, Mary Benner, and appointed Frederick, executor, who appealed from the decree.

*G. R. Fox*, for appellant.—The deed was a mere power of attorney, and revocable: Scales *v.* Maud, 25 Law J. R., N. J. Chan. 433; Wildey *v.* Richards, 1 Collyer 663; Mark Cottle's Case, 1 P. Wms. 101. So far as the children were concerned, there is no consideration: Kekewich *v.* Manning, 12 Eng. L. & E. R. 120; 2 Story's Eq. J., § 987; Jeffrys *v.* Jeffrys, 1 Craige and Phillips 141; Holloway *v.* Headington, 8 Sim. 324.

The trust for the children is executory: Garrard *v.* Lauderdale, 3 Sim. 1; s. c. 2 Russ. & M. 451; Coleman *v.* Sarel, 3 Brown's Ch. 12; Hill on Trustees 89, note, citing Ward *v.* Auckland; Painter's Estate, 6 Wright 156; Cressman's Appeal, 6 Wright 147, and the cases cited by Judge Read in the opinion of the court; 2 Story's Eq. § 282; Id. § 972; Acton *v.* Woodgate, 2 M. & K. 492; Walwyn *v.* Coutts, 3 Mer. 707; Wright *v.* Wright, 1 Ves. 412; 2 Story's Eq., § 1196; Id., § 987.

The conveyance is not *complete*, for it gives but a *life estate* in the lands *to the trustees:* Hill on Trustees 89.

*B. M. Boyer* and *B. E. Chain*, for appellees.—The validity of this deed as an *executed* conveyance was decided in Nace *v.* Boyer, 6 Casey 99, and although voluntary, will be supported in equity: Ellison *v.* Ellison, 6 Ves. 656; 2 Story's Eq. § 973; Hill on Trustees, 2d Am. edition 111, 114–122; 1 Leading Cases in Equity, ed. by Hare & Wallace 219–246; Dennison *v.* Goehring, 7 Barr 175; Greenfield's Estate, 2 Harris 501; Bunn *v.* Winthrop, 1 Johns. Chanc. Rep. 329. In a deed of this character no words of inheritance are required: Fisher *v.* Fields, 10 Johns. 515, *505; Chamberlain *v.* Thompson, 10 Conn. 243; Welsh *v.* Allen, 21 Wend. 147; Gould *v.* Lamb, 11 Met. 84; Neilson *v.* Lagow, 12 How. 98; North *v.* Philipbrook, 34 Maine 532; Cleveland *v.* Hallet, 6 Cush. 403; Note, Hill on Trustees, 2d Am. ed. 372, 251*.

[Frederick's Appeal.]

*G. R. Fox*, in reply.—As a trust for the grantor's own benefit, even if a technical executed trust, it is revocable at the pleasure of the grantor: Garrard *v.* Lauderdale, *supra ;* Page *v.* Brown, 4 Russ. 6; s. c. 2 Russ. & My. 214; Bill *v.* Coneton, 2 My. & K. ; Gibbs *v.* Glamis, 11 Sim. 584; Ravenshaw *v.* Hollier, 7 Id. 3 ; Welding *v.* Richards, 1 Coll. 655; Law *v.* Bagwell, 4 D. & W. 398; Brown *v.* Cavendish, 1 J. & L. 635 ; Simmonds *v.* Palles, 2 Id. 489; Hughes *v.* Stubbs, 1 Hare 476; Gaskell *v.* Gaskell, 2 Y. & J. 502; Antrobus *v.* Smith, 12 Ves. 39; Meek *v.* Kettlewell, 1 Hare 464; Halloway *v.* Headington, 8 Sim. 324; Beatson *v.* Beatson, 13 Id. 381; Ward *v.* Audland, 8 Id. 571; Coop. Rep. 146; 8 Beav. 201; Edwards *v.* Jones, 1 My. & C. 238; Blakely *v.* Brady, 2 Dru. & Walsh 311.

The opinion of the court was delivered, June 25th 1866, by

WOODWARD, C. J.—Philip Nace, of whose estate the appellant is executor, made a deed to trustees October 29th 1853, of real and personal estate, and afterwards filed a bill in equity to cancel and set aside the deed on account of imbecility and fraud. He failed in that suit: see Nace's Appeal, 6 Casey 99. Afterward, on the 19th of February 1861, he executed a deed revoking the powers and trusts of the deed of 1853, except as to the rights of creditors, and subsequently made a will appointing Frederick his executor, and bequeathing part of his estate for the use of his idiot son Paul, and the remainder to the children of his deceased daughter, Mary Benner. The two acting trustees under the deed of 1853, settled an account in the Common Pleas, showing a balance of money in their hands of $2566.47, which the executor claims on the ground that the power to dispose of it under the deed of 1853 was revoked by the deed of 1861.

Whether the deed of 1853 was a revocable instrument is the question upon the record.

It is a mistake to argue that that question was virtually decided by our decision reported in 6 Casey, for it was not then before us, and was expressly reserved in the opinion that was delivered. We decided then that the instrument was not void, for the reasons alleged against it. We are to decide now whether it was revocable.

This question must depend upon the essential nature and legal effect of the instrument, and therefore its contents must be analyzed. It begins with a preamble, in which the grantor recites losses and indebtedness that have resulted from disadvantageous bargains and undertakings, and from the fact that he is old and feeble—that he has become so much troubled in mind as to be incapable of attending properly to business, and has reason to fear that his affairs may fall into confusion, and his estate be lost—and that he believes a transfer of the entire management

of his business to three discreet and reputable persons would spare him much trouble, and save him from further losses and destruction of property—and then in consideration of the premises and of a dollar, follows a conveyance in the form of a deed-poll to Tobias Nace, John Boyer, and Thomas Scholl, and to the survivors of them, certain real estate in Montgomery and Bucks counties, and all his personal estate, upon the following conditions and trusts:—

1. That the trustees shall proceed forthwith to collect all outstanding claims or debts, and take into their custody all the personal property.

2. That they shall make sale of such portions of the real and personal estate as they may think best.

3. That from the moneys arising from such sale they pay his just debts, and invest the residue upon the security of real estate at usual interest.

4. That from the said interest, after deducting necessary expenses and charges, they maintain and support said Philip Nace for life, and on the first Monday of April in each year make a statement to him of their receipts and payments.

5. And within one year after his death that they divide the balance that may be left, including arrears of interest, among his nine children (who are named) share and share alike.

Then follows a covenant on the part of the trustees that they will faithfully execute the foregoing trusts; but the instrument is not signed by them, though their written acceptance of the trusts is subjoined.

Now on the part of the appellant it is maintained that the deed was a mere power of attorney; an instrument of agency, and therefore revocable at pleasure, whilst on the part of the appellees it is regarded as a voluntary trust, in behalf of the children, fully executed by a legal conveyance, and therefore to be supported in equity. The leading case on the subject of voluntary trusts in equity is Ellison v. Ellison, 6 Ves. 656; and see the subsequent cases discussed in Smith's Leading Cases in Equity, vol. 1, p. 167; but it is not necessary for us to go into them on this occasion, because we are of opinion that the deed in question here was made for the grantor's own personal convenience; that the trustees were to account to him for all they did under the powers vested in them, and that no beneficial interest was to vest in his children till after his death. A disposition of property to take effect after the grantor's death is testamentary and therefore revocable. If it be said that the trustees were sons-in-law, and that their powers were coupled with an interest, still their powers would be revoked by the grantor's death. A power coupled with an interest, said Lord Ellenborough in Watson v. King, 4 Camp. 272, cannot be

[Frederick's Appeal.]

revoked by the person granting it, but is necessarily revoked by his death, for how can a valid act be done in the name of a dead man?  As to what is the true meaning of this phrase, " a power coupled with an interest," see Chief Justice Marshall's observations in Hunt *v.* Roumanier's Adm'rs., 8 Wheat. 174.  So far as the powers of the trustees were *exercised* before the grantor's deed of revocation, valid rights vested, and therefore the titles which they conveyed are not to be questioned.  They had power to grant the lands in fee, and to sell the personalty absolutely, and their payment of creditors was regular and relieves the case of all questions touching them.  The contest is narrowed down to the children mentioned in the deed of trust and to the legatees under the will.  It involves neither creditors nor purchasers from the trustees.  Such a contest must be decided by the very terms of the instrument alleged to create the trusts, and seeing that it was founded in no consideration paid by the trustee (as is the case in Dennison *v.* Goehring, 7 Barr 175) ; that for the support and services they were to render they were to compensate themselves out of the estate, and that the manifest intention of the grantor was simply to promote his own convenience and protect his own interests, the utmost that can be made of it is that it was a mere covenant for posthumous gifts, and as such *nudum pactum*.

It follows that the reserved power of revocation was well executed by both the subsequent deed and the will.  The fund in court ought therefore to have been awarded to the executor.

And now, to wit, June 25th 1866, this case having been argued and considered, it is ordered and adjudged that the decree of the Court of Common Pleas of the county of Montgomery, awarding the fund in court to Boyer and Scholl, the trustees, be taken for nought, reversed and set aside, and it is here decreed that the said fund be paid to the appellant as executor of the last will and testament of Philip Nace, deceased, and that the appellees pay the costs.