# Rife's Appeal.

1. A deed of trust of all the property of the grantor to be held for his own maintenance and support and containing a testamentary disposition of the same, is not revoked by a subsequent deed of trust consistent with the former and executed for the purpose of substituting a new trustee over the same and subsequently acquired property

2. A declaration of an intention to make a will at a future time, even although embodied in a formal recital in a deed, will not operate as a revocation of a previous testamentary disposition.

May 21st, 1885. Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ. PAXSON and STERRETT, JJ., absent.

APPEAL from the Orphans' Court of *Lancaster county*: Of January Term 1885, No. 362.

This was an appeal by Jacob Rife from a decree of the said court sustaining exceptions to the report of an auditor appointed to make distribution of the funds in the hands of Milton Heidlebaugh, administrator of the estate of Isaac Rife, deceased.

The facts as found by the Auditor (Thomas B. Cochran, Esq.,) were substantially as follows: On October 13th, 1868, Isaac Rife made a voluntary deed of all his property to one Uriah Eckert, in trust for his own maintenance and support. This deed contained, *inter alia*, the following testamentary clauses: "And immediately after the decease of the said Isaac Rife, should any real estate be left belonging to said trust, the same shall be sold by my said trustee, and the proceeds arising therefrom and said principal sum, together with all my other property, shall be equally divided among my three named children, share and share alike, to wit: Catharine, intermarried with Richard Stewart; my sons Jacob and Levi; or in case of the death of either of them, to their heirs or representatives.

"It being understood and intended that no part of this trust estate is to be paid by my said trustee after my decease to my son William P. Rife, but the whole thereof to be given in equal shares to my daughter and sons, or their representatives, as above directed and designated."

Eckert accepted the trust and performed the duties required under its provisions until December 13th, 1879, when he filed his account, and had a settlement with Rife, the balance in his hands in favor of the trust being $1,792.25.

On December 13th, 1879, Isaac Rife being entitled to other

moneys, which he inherited from his half-sister, Keziah Eckert, who had died several years after the execution of the first deed, made another and second deed of trust to Milton Heidlebaugh of all the moneys so inherited "and also the just and former sum of $1.792.25, received by said Heidlebaugh from Uriah Eckert, my former trustee." This deed was also in trust to support the grantor during his life, it contained no direction as to what should be done with or who should receive the trust money remaining at his decease, but contained a clause as follows: "It is hereby understood that in case said Rife should die without leaving a last will and testament, which he hereby reserves the power to make, his son, William P. Rife, shall receive no share of his property, unless otherwise disposed of by the last will and testament of said Isaac Rife."

Isaac Rife died in 1881, leaving a widow and four children, Jacob, Levi, and William P. Rife and Catharine Stewart. On September 27th, 1881, Heidlebaugh took out letters of administration on the estate of Isaac Rife, and on October 5th, of same year, he filed an account in the Common Pleas as successor of Uriah Eckert and under the second deed of trust, showing a balance of $1391.26 and when he filed his inventory as administrator on October 12th, 1881, he charged himself with this sum.

On May 20th, 1884, Heidlebaugh filed a final account as administrator showing a balance of $3,160.18 for distribution. This fund was referred to the Auditor to distribute and he divided the same, except the widow's dower, among the three children named in the first deed of trust. To this report B. F. Hull, to whom William P. Rife had assigned his interest in said estate, filed exceptions which were sustained by the court, LIVINGSTON, P. J., who held that the second deed revoked the first and that hence the decedent died intestate and William P. Rife was entitled to come in equally with the children and accordingly entered a decree to that effect.

Jacob Rife then took this appeal assigning for error this action of the court.

*H. C. Brubaker* and *George A. Lane*, for appellant.—Both deeds containing testamentary disposition of the decedent's property were in force at the time of his death, and should, as one continuous trust, control the distribution of the fund. The testamentary portion of the second deed was in the nature of a codicil to the first deed, and contained nothing that was inconsistent therewith.

The intention of the grantor to disinherit his son was clear and should govern the construction of the deeds: Postlethwaite's Appeal, 18 P. F. S., 477; Hirst's Appeal, 11 Norris, 497.

*J. W. F. Swift* (*H. B. Swarr* with him), for appellee.—The first deed, being a voluntary trust and created by those who were *sui juris*, was terminated by their own act. Another trust was created by the execution of the second deed. If the first deed be considered as still in effect, it ought to control only the funds included in it.

That the merely negative words in the last deed are not sufficient to disinherit William P. Rife, unless there is an actual gift to some other definite object, is a rule of law so thoroughly adjudicated, that we need only refer to 2 Jarman on Wills, 112; Hitchcock *v.* Hitchcock, 11 Casey, 393; Murry *v.* Murry, 6 Watts, 356; Will of Louisa Rorer, 7 Phila., 524.

Mr. Justice TRUNKEY delivered the opinion of the court, October 5th, 1885.

The deed dated October 13th, 1868, contained the following: "Immediately after the decease of the said Isaac Rife, should any real estate be left belonging to said trust, the same shall be sold by my said trustee, and the proceeds arising therefrom and said principal sum, together with all my other property, shall be equally divided among my three named children, share and share alike, to wit: Catharine, intermarried with Richard Stewart; my sons Jacob and Levi; or in case of the death of either of them, to their heirs or representatives. It being understood and intended that no part of this trust estate is to be paid by my said trustee after my decease to my son William P. Rife, but the whole thereof to be given in equal shares to my daughter and sons, as above directed and designated."

Eckert, the trustee, filed his account on December 13th, 1879, and on January 19th, 1880, was discharged from the trust "upon the payment over to his successor the balance in his hands." On the day that Eckert filed his account, Rife executed the second deed of trust to Milton Heidlebaugh, vesting in him for the purposes of the trust the balance in the hands of the former trustee, together with other moneys or property. This deed had a provision as follows: "It is hereby understood that in case said Rife should die without leaving a last will and testament, which he hereby reserves the power to make, his son, William P. Rife, shall receive no share of his property unless otherwise disposed of by the said last will and testament of said Isaac Rife."

So far as relates to the conduct of the property and the maintenance of Isaac Rife while he lived, the provisions of the deed are substantially alike. The discharge of Eckert was upon his own petition to the court, agreed to by Rife, and the court appointed Heidlebaugh on Rife's petition. Eckert paid

the balance in his hands directly to his successor. The second deed put additional money within the operation of the trust and named another trustee; these are its ostensible purposes. Hence, although the first trustee was discharged, the trust was continued; but had the trust itself been revoked, it would only be a fact to consider in ascertaining whether there was an intent to revoke the testamentary disposition of the estate. That a will in the form of a deed, or a will constituting part of an instrument, the other part being a deed, may be revoked in the same manner as a formal will, in technical language, is not denied by the appellant. Question may arise whether an instrument is a will, not whether a mere will is revocable by the maker. In Turner *v.* Scott, 51 Pa. St. 126, Frederick's Appeal, 52 Id. 328, the instruments in question were in form of a deed; each was held to be a will, and revoked by the subsequent will of the testator.

Clearly the first deed included a will disposing of the trust estate, together with all the testator's other property; and a direction by the testator that no part of the trust estate, after his decease should be paid to his son William by the trustee. In the second deed he declares that in case he should die without leaving a last will and testament, which he reserves the power to make, his son William shall receive no part of his property. The testamentary clause in the second deed contains no revocation. At most, aside from iteration of the disinheritance of William, the testator expresses an intention to make a will.

A mere intimation by a testator of his intention by a future act to make a new disposition, does not effect an actual present revocation. It is not sufficient to revoke a will, that the testator made a subsequent will, unless the subsequent will differs from and is inconsistent with the former: 1 Jarman on Wills, *171, *173.

A will is valid however irregular in form or inartificial in expression, if it discloses the intention of the maker respecting the posthumous destination of his property; and if this appear any contrary title or designation by him will be disregarded. The same instrument may be partly a deed and partly a will; 1 Jarman on Wills, 33, n. 7 (*18). Whatever the form of the instrument, if it vest no present interest, but only directs what is to be done after the death of the maker, it is testamentary: Turner *v.* Scott, *Supra.*

The learned judge of the Orphans' Court held that the first deed of trust was revoked, and consequently the testamentary disposition fell. On this basis his conclusion that under the intestate laws William is entitled to share with his brothers and sister is unassailable. The second deed has no posthumous

[Rugg & Bryan *v.* Moore.]

disposition—only a declaration that William shall receive no share of the property. Were it not for the prior testament the case would be within the rule, " that merely negative words are not sufficient to exclude the title to the heir or next of kin. There must be an actual gift to some other definite object." We fail to discover that the testament in the first instrument is revoked. No present intent, at the time of the execution of the second instrument, to revoke the former testament is evidenced by the circumstances. Nothing in the second clashes with the first, both can consistently stand. That the testator contemplated the making of a formal will at · some future date, was not a revocation of the testamentary disposition already made.

> Decree reversed, and now it is considered and decreed that distribution of the money be made to the legatees, Jacob E. Rife, Levi E. Rife and Catharine Stewart, in accord with the auditor's report. Costs of appeal to be paid by the appellee.