## Olmsted Estate

*Compton & Handler*, for petitioners.

*M. W. Jacobs, Jr.*, for trustee.

*Wm. S. Middleton*, guardian and trustee ad litem, p. p.

RICHARDS, P. J., August 4, 1947 —On July 21, 1917, a deed of trust was executed by and between Robert A. Olmsted, of Coudersport, Pa., and the Common-

wealth Trust Company of Harrisburg, Pa. On August 15, 1942, the Capital Bank & Trust Company of Harrisburg, Pa., successor trustee, filed its first and partial account in this court. No exceptions having been filed to this account, it was duly confirmed by a nisi order on October 8, 1942, said order becoming final 10 days thereafter. The trustee filed its second and partial account on January 1, 1947. To this account an exception was filed on behalf of Robert A. Olmsted, settlor, alleging that no provision was made for payment and delivery of the corpus of the estate to him as he had demanded. Thereafter a petition was presented to terminate the trust. This petition was executed by the settlor and joined in by his wife and three children. The court appointed a guardian ad litem for the minors involved and a trustee ad litem for unborn persons having an interest. An answer was filed by the trustee and by the guardian and trustee ad litem. Testimony was taken and the case duly argued.

Before embarking upon a discussion of the issues involved, we will outline briefly the provisions of the trust agreement and the circumstances relating to the settlor and his family.

*The trust agreement and its several modifications*

The trust agreement is denominated an indenture. It was executed under seal by settlor, Robert A. Olmsted, and was duly acknowledged by him to be his act and deed. It was also executed by the Commonwealth Trust Company, being signed by its president, attested by its secretary, and acknowledged by its attorney. In the body of the instrument W. G. Rauch was constituted and appointed attorney of the Commonwealth Trust Company to acknowledge the indenture on its behalf, as the act and deed of said company, to the intent that it might be duly recorded. In the acknowl-

edgment itself, the indenture was acknowledged as the act of said company.

The instrument recites:

"Whereas the Settlor has this day transferred to the Trustee by delivery and by appropriate instruments in writing certain bonds, stocks, mortgages, judgments, notes, contracts and policies of life insurance set forth in a schedule hereto attached and made a part of this instrument, with the understanding and agreement that the same shall be held, controlled, managed and applied for such uses and purposes and with such powers in the Trustee as the Settlor shall, by an instrument in writing, declare; and

"Whereas it is the desire of the Settlor to set aside the funds represented by the said securities and other property and such other funds as he may hereafter add hereto, for the benefit of himself during his life and for the benefit of his wife and children after his death."

"1. To hold, manage and control the same during the existence of the trust hereby created; to collect and receive the interest, dividends and other income accruing therefrom; to collect and receive the principal thereof and to give good and sufficient releases and acquittances therefor and, if in the judgment of the Trustee it is necessary or desirable so to do, to settle, adjust, compromise and compound the said principal and income or any part thereof, and any claims or demands arising from or under said evidences of indebtedness, certificates of stock, contracts and policies of insurance for such sums of money and upon such terms and conditions as shall appear to the Trustee to be for the advantage of the trust including the power to cancel the said policies of insurance or any of them:

"2. To sell and transfer, at such times and for such prices as to it may seem proper, the said securities, stocks and contracts or to exchange the same or any of them for other securities; to invest, re-invest and keep

invested the proceeds of such sales and collections of principal in such securities as it may deem safe and advantageous to the trust, without being restricted to securities authorized by statute or the decisions of the courts for the investment of trust funds and without applying to the court for directions for such investments, and to sell and transfer or otherwise convert such securities, and securities from time to time substituted therefor, and reinvest the proceeds in like manner according to its best judgment;"

Paragraph 3 directs the trustee, *during the life of the settlor*, to add one third of the net income to the corpus of the trust and to pay the balance of the net income to settlor.

Paragraph 4, containing subparagraphs (*a*) to (*g*) inclusive, provides what shall be done with income and corpus *upon the death of settlor*.

Paragraph (*a*) directs the payment of $50,000 to Katherine F. Olmsted, widow of settlor.

Paragraph (*b*) directs the income of one half of the residue to be paid to settlor's widow for life. Upon her death, or death of settlor, whichever shall happen last, the corpus and accumulated income of this one half is to be used for the benefit of settlor's children, and their children in the same manner as is provided in paragraphs (*c*), (*d*), (*e*) and (*f*).

Paragraph (*c*) directs that one sixth of the residue of the corpus shall be set aside for the benefit of settlor's son, Arthur. So much of the income as may be required is to be used for his maintenance and education until he arrives at the age of 21 years. Upon attaining that age he is to be paid the accumulated income of said one sixth share and one fourth of the corpus thereof. Thereafter he is to be paid the income of the remaining three fourths part until he arrives at the age of 30 years, at which time he shall receive another one fourth of the corpus. Thereafter he is to

receive the income for life on the remaining one half of the corpus set aside for him. Upon his death, the balance remaining is to be paid to the children of said son.

Paragraphs (d) and (e) make like provisions for the two other children of settlor.

Paragraphs (f) and (g) contain the following provisions:

"(f) Upon the death of either of the settlor's said children, leaving no children to survive him or her, to hold and dispose of the income and principal of the said share of the settlor's child so dying to the use and benefit of the settlor's surviving child or children, and his, her or their children, and to the use and benefit of the then surviving children of the settlor's deceased children, if any, in the same manner as is provided in the preceding sub-paragraphs (c), (d) and (e).

"(g) In the event that there shall be no grandchildren or other lineal descendants of the settlor living at the death of the settlor's last surviving son or daughter, to distribute the principal of the trust estate with accretions thereon, if any, to and among the next of kin of the settlor in accordance with the intestate laws of Pennsylvania."

The only other provisions we need mention are paragraphs 5, 7, and 8, which read as follows:

"5. In the event that the settlor shall hereafter have any other children, the shares of the said Arthur George Olmsted, Warren Fizzell Olmsted and Margaret Ellen Olmsted shall be proportionately reduced and such after born child or children and his, her or their children shall in all respects participate equally and in the same manner with them and their children in the income and principal of the trust estate and with the same rights of survivorship.

"7. The word 'children', as used herein, shall include the singular number and shall also include other

lineal descendants, and such children and other lineal descendants shall take in the same proportions as if the estate distributable among them had passed directly to them respectively from their ancestor, being the son or daughter of the settlor, under the intestate laws of Pennsylvania."

"8. The settlor reserves the power:

"(a) In the event of the resignation of the Trustee or other vacancy in the trusteeship, to appoint a new Trustee;

"(b) From time to time to add to the funds of the trust estate such sums of money, invested funds or other property, real or personal, as he may see fit; such additions to be held and disposed of upon the same trusts as the principal estate, and,

"(c) By this last will, to add beneficiaries or to change the proportions and interests the beneficiaries, other than himself, shall respectively take hereunder or the conditions upon which they shall participate in the income or principal of the trust estate."

Under date of December 6, 1934, a modification of the trust deed or agreement was executed. Robert A. Olmsted, settlor, joined as party of the first part. Katherine F. Olmsted, wife of settlor, Arthur George Olmsted, Warren Fizzel Olmsted and Margaret Ellen Olmsted, children of settlor, all of whom were then 21 years of age, joined as parties of the second part. The Commonwealth Trust Company, Trustee, joined as party of the third part. This instrument recited that the original trust fund had been created for the benefit of the parties of the first and second parts and that the income had become insufficient to support them in accordance with their station in life. It was further stated that each of the children was possessed of a vested interest in a part of the corpus, subject to the rights of settlor for life, and was possessed of addi-

tional interest, subject to the rights of settlor and his wife for life. It was agreed that the trust agreement be modified and that payments be made from corpus to Katherine F. Olmsted, Arthur George Olmsted, Warren Fizzell Olmsted and Margaret Ellen Olmsted, the payments made to each to be charged against their respective distributive shares and the total payments from corpus limited to $36,000. Settlor agreed not to exercise his right under paragraph 8(c) of the original agreement in such a manner as to affect the vested distributive shares charged with the advancements. The parties of the first and second part agreed to indemnify the trustee and its successors against any loss resulting from compliance. The trustee agreed to make the payments provided, within the prescribed limits so far as the assets of the trust permitted. This modification agreement was duly executed and acknowledged by each of the parties thereto.

A second modification agreement was executed on November 8, 1937. This modification contained the additional provision that the trustee was irrevocably authorized to protect itself against loss by recoupment from the respective vested shares of the parties, by means of a prior equitable lien thereon. Otherwise, the modification was quite similar to the first one.

A third modification agreement was executed on October 28, 1940. This agreement is similar to the second modification, except that the payments provided were payable only to Katherine F. Olmsted.

The fourth and final modification was executed on November 4, 1942. This agreement is similar in most respects to the third one mentioned above.

Attached to the indenture are schedules showing the assets delivered to the trustee. They consist of bonds, notes, insurance policies, stock certificates, cash, checks, drafts, mortgages, judgments, land contracts, deeds

and other securities. The greatest amount of corpus ever in the trust was $500,784.87, now reduced to $421,081.17.

The amount of corpus distributed to the beneficiaries totals $100,800.

Under date of January 22, 1947, settlor in writing notified the Capital Bank & Trust Company, successor trustee, that he had terminated and revoked the trust agreement.

## The settlor and his family

Settlor is an attorney-at-law. At the time the trust agreement was executed he was 41 years of age, and he is now 71 years of age. His wife is about the same age and is still living.

The three children of settlor and his wife are: Arthur George Olmsted, Warren Fizzel Olmsted and Margaret Ellen McLeod Olmsted. At the time the trust agreement was executed they were nine, seven and five years of age respectively. All are still living.

Arthur George Olmsted is married and has three living children, to wit: Robert William Olmsted, Ann Olmsted and John Olmsted.

Warren Fizzel Olmsted is married and has one child, Jane Mandeville Olmsted.

Margaret Ellen Olmsted married Glen R. Rounds and has one child, William Eugene Rounds.

## Issues involved

The petition raises three principal issues, namely, that the trust may be revoked and terminated because:

1. The trust agreement is testamentary in character;

2. That the trust violates the rule against perpetuities; and

3. That the purpose of the trust has failed.

These contentions will now be considered.

## Discussion

Counsel for petitioners maintains that the indenture here involved created a trust inter vivos; that it is testamentary in character and revocable at the option of settlor. It is urged that no person other than settlor obtained any present right under the instrument. The rights conferred upon settlor's wife, children and issue are said to be effective only upon the death of settlor, since the gift to them is inferred from a direction to pay. Hence, it is argued, since the direction to pay relates to the future so does the gift.

Mr. Justice Allen M. Stearne, while judge of the Orphans' Court of Philadelphia County, had occasion to delineate the distinctions between trusts which are testamentary in character and those which are not. In Kenin's Estate, 41 D. & C. 572, 575, he laid down the guiding principles in the following language:

"In determining whether an instrument is testamentary, intention is important: Fidelity Trust Co., Admr., vs. Union National Bank of Pittsburgh, et al., 313 Pa. 467, 490. We are therefore required to ascertain exactly what this settlor intended to accomplish by his deed. It would seem to be well established that where there is an immediate and absolute transfer of the res to a trustee for the use or benefit of named or presently ascertainable individuals or purposes, the trust is NOT testamentary in character. Conversely, where there is no immediate transfer, or if the beneficiaries are not named or presently ascertainable, but such ascertainment depends upon the terms of a will or other testamentary disposition, effective only after death, the trust IS testamentary in character."

In Tunnell's Estate, 325 Pa. 554, 560, Mr. Justice Linn stated:

"The general rule is that a testamentary trust results 'where the owner of property purports to create

a trust inter vivos but no interest passes to the beneficiary before the death of the settlor'."

In Windolph v. Girard Trust Co., 245 Pa. 349, 368, the court discussed the contention of counsel that a trust was testamentary in character:

"It is contended that the instrument bears upon its face evidence that it was not intended to take effect in the lifetime of Annie Windolph. These evidences of its testamentary character, it is claimed, are that the settlor reserved to herself the entire income from the trust property during her life, that the estates of the remaining cestui que trustent were not to take effect in possession or enjoyment until after her death, and that there was a power of revocation reserved in the instrument. We think, however, these reasons are not sufficient to avoid the deed as a valid declaration of trust and to show that it was intended as a disposition of property to take effect after death."

The court then, on page 368, quoted the following from Wilson v. Anderson, 186 Pa. 531, 539:

"The general rule is that if the intention of the grantor at the time he delivered the deed was to part with the legal title, the trust will be enforced in favor of the beneficiaries, even though their enjoyment of the estate is postponed until the death of their benefactor."

In Beirne v. Continental-Equitable Title & Trust Co., 307 Pa. 570, the court was considering a trust inter vivos. The trustee had been given certain duties with reference to management and the trust instrument required that the net income be paid to settlor during his life and that after his death the corpus was to be paid to certain individuals and charities. It was contended that the trust was testamentary in character and was a dry and passive trust rather than an active one. In disposing of this contention the Supreme Court stated (p. 576):

"It is clear beyond reasonable question that the deeds are not testamentary in character and that the trusts created thereby are active, and not dry or passive. Under them, the trustee has active duties to perform and does not merely hold the legal title to the assets named; hence the trust is an active and not a passive one. . . . The fact that the settlor could have revoked the trusts at any time is a matter of no moment, since he did not in fact revoke them. . . ."

There were no spendthrift provisions in this deed of trust.

In Fidelity Trust Co. v. Union National Bank of Pittsburgh, 313 Pa. 467, 490, the court said:

"In determining whether an instrument is testamentary, intention is important."

In view of these pronouncements, what was the intention of settlor? He was a man 41 years of age, having a wife and three children. He had accumulated a very sizeable estate. He was a lawyer by profession and sought the aid of able counsel in preparing the deed of trust. By his own act he transferred the legal title to the various securities and property to his trustee. He retained no right to manage the assets. He vested his trustee with extensive power and discretion in the handling of the trust res and in the investment and reinvestment thereof. He provided for an income to himself for life and directed that the remaining income be added to the corpus. He conferred benefits upon four living and ascertained persons in addition to himself. He provided a method of modifying the indenture by will but excluded the right to increase his own interest. In our opinion, he intended to create an active trust, and well knew he was not writing a will. In the language of Judge Stearne, above quoted, there was "an immediate and absolute transfer of the res to a trustee for the use or benefit of named or presently ascertain-

able individuals or purposes." Hence, the trust is not testamentary in character.

Counsel for petitioners has quoted Bowers' Trust Estate, 346 Pa. 85, as authority for the statement that courts at times fail to distinguish between testamentary trusts and trusts inter vivos. We appreciate the distinction drawn, but note that this same case is authority for the conclusion that a trust such as the one we are considering may not be terminated. The opinion, written by Mr. Justice Horace Stern, states on page 87:

"If all the parties who are or may be beneficially interested in a trust are in existence and sui juris, if there is no ultimate purpose of any kind requiring its continuance, and if all the beneficiaries consent, a court of equity will decree its termination; of course, if there are contingent remaindermen not in existence or not ascertained, the trust cannot be terminated since it is then impossible to obtain the consent of all possible interests. If the purpose of the settlor in establishing the trust has not been fully accomplished, as, for example, where there is in existence a spendthrift trust, and if the settlor is deceased and therefore incapable of consenting, the trust cannot be terminated even though all the beneficiaries desire that it should be."

Frederick's Appeal, 52 Pa. 338; Rife's Appeal, 110 Pa. 232; and Chestnut Street National Bank v. Fidelity Insurance & Safe Deposit Co., 186 Pa. 333, have likewise been pressed to our attention as authority for termination of the trust we are considering. These three cases were commented upon by the Supreme Court in the later case of Wilson v. Anderson, 186 Pa. 531. There it was said (p. 537):

"The case relied on by the appellant as determining that this deed should be construed a will (Frederick's Appeal, 52 Pa. 338), does not by any means hold that a deed of trust reserving to the grantor the income of the trust estate for life, and postponing until his death

the enjoyment by the beneficiaries of the principal, is necessarily testamentary without regard to the manifest intent of the grantor. The decision in that case proceeds wholly upon an ascertainment of the intention of the testator from the instrument itself. . . .

"We do not favor an extension of the doctrine of Frederick's Appeal, supra, an exceptional case, to cases not clearly within it on their facts."

In referring to Rife's Appeal and Bank v. Insurance Co., supra, the court added:

"In Rife's Appeal, 110 Pa. 232, also cited by appellant, the intent of the testator that the instrument, in form a deed, should constitute his will in case he made none other, is manifested by his language in the deed.

"The decision in Bank vs. Insurance Co., 186 Pa. 333, is put upon the ground that testatrix intended the instrument to be revocable, and, if she had been advised of its importance, would have inserted a power of revocation."

The opinion then added:

"The general rule is that if the intention of the grantor at the time he delivered the deed was to part with the legal title, the trust will be enforced in favor of the beneficiaries, even though their enjoyment of the estate is postponed until the death of their benefactor. Equity, because of exceptional facts in rare cases, has revoked the trust, or held it revocable by the grantor, because plainly a testamentary instrument; but, the general rule has remained without change."

In Murphey et al. v. C. I. T. Corporation, 347 Pa. 591, settlor and his wife executed a deed of trust and conveyed property owned by them as tenants by entireties to the trustee. The deed of trust contained spendthrift provisions. The income was payable to settlors for life and upon the death of the survivor

the corpus was to be conveyed to two daughters, with a contingent grant to grandchildren should the daughters, or either of them, die before the life tenants. Settlors also reserved the right to revoke the trust. After the death of the wife, defendant, as creditor of the husband, attempted to issue execution against the real estate involved in the trust. After holding that settlors' attempt to create a spendthrift trust was abortive, the court stated (p. 594):

"Therefore, since Flint and his wife would have conveyed to their daughters the complete title to the property notwithstanding defendant's judgment, they could, of course, grant them a less estate, namely, the remainder after the life interests which were created by the deed. Nor was the estate given to the remaindermen testamentary in nature; the deed vested in them an immediate, beneficial interest, only the enjoyment and possession being postponed until the death of the grantors; in that connection it is not material that the grantors reserve to themselves the power of revocation or modification."

In Shapley Trust, 353 Pa. 499, 500, the court again was dealing with an inter vivos trust. Mr. Justice Allen M. Stearne, speaking for the court, stated:

"The deed and its amendment transferred a fund to a named trustee, with active duties, to pay the income to settlor for life and 'in addition thereto so much of the principal thereof . . . as I may in writing from time to time request' and at settlor's decease to transfer the corpus to named beneficiaries. Settlor reserved the right to revoke, alter or amend, in whole or in part. A will, dated some nine years after the date of the deed, make a different disposition of settlor's estate than that provided in the deed for the distribution of the trust fund.

"We need not restate what has been so accurately written in the court below concerning the line of de-

marcation between a valid inter vivos trust and one which is testamentary in character. It will suffice to say that where the deed vests a present interest in the beneficiaries it is a valid inter vivos trust. It is not rendered testamentary in character because the settlor reserves a beneficial life estate, and in addition, a power to revoke or modify in whole or part . . .

"The method of revocation provided by a deed must be strictly followed: Reese's Estate, 317 Pa. 473, 177 A 792; Hacker's Appeal, 121 Pa. 192, 15A 500."

In Reese's Estate, 317 Pa. 473, 474, 475, settlor delivered $9,000 to her trustee, with directions to pay the income to her for life and upon her death to pay the principal to certain designated persons. A method of revocation was prescribed. Here the court said:

"It is clear beyond peradventure that the trust is an active one, in which the ultimate distributees have an immediate interest, and is irrevocable, on the part of the settlor, except as specified in the agreement itself . . .

"Upon his mistaken theory that the trust agreement was testamentary in character appellant further claims that the settlor's later will disposed of her entire estate. This also is an error, since, as we have decided, the agreement was not testamentary in character."

Our attention has been directed to the fact that the present trust contains no spendthrift provisions. In our opinion the existence of a valid spendthrift provision in a deed of trust, being one of the purposes thereof, may constitute a sound reason for denying the revocation or termination. But it does not follow that the absence of such provision makes the trust revocable. We think the true test is laid down in Baughman's Estate, 281 Pa. 23, on page 39, where it was said:

"On the other hand, appellant claims that, since active duties are imposed on the trustees, the trust cannot be ended on the election of the church. Of

course, 'the placing of the estate in a trust, and investing the trustee with authority' over it, indicates an intent that the trust shall not be terminated (Field's Est., supra, page 478) ; but the character of the trustee's duties, while the trust is in existence, does not conclusively determine that question. Thus, on a gift of a property to A., upon an active trust for B. for life, with remainder to C. B. cannot end the trust, without the consent of C., and not even then unless no other legal reason appears for keeping it alive; as, for instance, where the life estate in B. is upon a spendthrift trust. So, too, on a gift of a property to A., in trust, to suffer and permit B. to occupy it for life, or to receive the rents from it during that period, with remainder to C., B. cannot terminate the trust, although the trustee's duties are passive, but B. and C. can, unless there are other legal reasons for keeping it alive. The true rule is that although the duties imposed on a trustee indicate that the testator had a purpose in establishing the trust, and the burden of proving that no such purpose exists rests on him who asserts it, yet, in its ultimate analysis, the question whether or not the court may end the trust, is not conclusively determined by the character of the trustee's duties, but depends upon whether or not (a) all who are or possibly may be interested in the property, are sui juris; and (b) all have consented to the termination of the trust; and (c) it is clear that no other legal reason exists for its maintenance. . . ."

This was approved and reiterated in Rehr v. Fidelity-Philadelphia Trust Co., 310 Pa. 301, and on page 305, the court added:

"No case has been cited to us, and we know of none, in antagonism to that principle, and we know of a number which support it."

We will now consider the contention that the deed of trust conferred no immediate benefits upon settlor's

wife and children. Counsel relies upon Rosengarten v. Ashton, 228 Pa. 389, and Feeney's Estate, 293 Pa. 273. In the Rosengarten case the will directed the trustee, upon the death of the last of testator's children, to make distribution "equally to and among all my grandchildren and the issue of such as may be dead, such issue to take the share the parent would have taken if living at the time of the death of my last surviving child." The court stated (p. 395) :

"Could words more clearly indicate the intention of the testator that a grandchild shall take only if living at the time of the death of his last child? And if a living grandchild will take only at that time, by the express words of the testator, it cannot take before."

The court accordingly applied the rule (p. 394) that "As the direction to pay or divide constitutes the bequest, the vesting of the interest itself is postponed, and not merely the possession or enjoyment of it". It must be noted, however, that no similar language occurs in the deed of trust we are considering, particularly with reference to settlor's wife and three living children.

In Feeney's Estate, supra, (p. 280, 281) the will provided that " 'the income from said fund shall be paid in equal shares to . . . said children' living at the death of the first life tenant"; and the court held that, "the provision as to time is annexed to the gift, not merely to the payment of it". Here again the court was dealing with phraseology which differs from that occurring in the trust we are considering.

The Supreme Court considered the nature of such gifts in Riverside Trust Co. v. Twitchell et al., 342 Pa. 558. There a fund was by will given in trust *to pay* the net income to testator's wife for life, and upon her death to his daughter, Katherine Gorgas Twitchell, for life. The court held that the daughter had a vested interest, subject to be divested by her death before her mother, and that the gift of the life estate to her "was

merely postponed to enable testator's widow to enjoy the income from the estate during her life". The court then proceeded to distinguish the Feeney case, supra, saying (p. 565):

"Defendant relies for such contention upon Feeney's Estate, 293 Pa. 273. That case is clearly distinguishable from the present controversy, for the reason that there the testator provided that 'the income from said fund shall be paid . . . to the said children' *living at the death of the first life tenant,* and clearly, therefore, the interest in the second life tenancies there were contingent, since the children could not be ascertained until the death of the first life tenant; while here, the second life tenant is ascertained, in being and ready to take upon the death of the first taker."

In this same opinion the court quoted from Buckman's Estate, 13 D. & C. 653, 655, as follows:

" 'It will, however, readily be perceived . . . that the contingency was inferred not merely from the direction to pay or to divide, but upon some language in the wills construed which indicated that the payment was to be made only upon the devisee's attaining a certain age or the like.' "

Also in this same opinion the court referred to Wheaton Coal Co. v. Harris, 288 Pa. 294, and quoted with approval the following:

" 'It is a well settled rule, repeated in numerous cases . . . that the test in determining if an interest is vested or contingent, is not the certainty or uncertainty of obtaining actual possession, nor the defeasibility or indefeasibility of the right of possession, inasmuch as estates may be vested in interest though without present right of possession. So long as the present right exists to a future possession the estate is vested, even though actual possession may be defeated by a future event.' "

This general subject was again before the Supreme Court in Rickenbach Estate, 348 Pa. 121 (1943). Mr.

Justice Allen M. Stearne, speaking for the court, again reiterated the guiding principles involved. He said (p. 125, 126):

"We have repeatedly decided that where there is a direction to pay and divide, but there is no separate and antecedent gift which is independent of the direction and time for payment, the legacy is *contingent*. The reason for the rule is that the gift itself is only *implied from a direction to pay*. Such a gift is necessarily inseparable from the direction, and hence must partake of its quality. If the direction is future and contingent so must the gift be. . . .

"There are many other cases, however, which held that even though there be no other gift than the direction to pay or distribute in futuro, if such gift or distribution appears to be postponed for the convenience of the fund or property, or to let in some other interest, the *vesting* will not be deferred until the period in question. The question is one of substance and not of form. Such intent must be gathered from the *entire will*. The inquiry is not restricted to the particular words in which the gift is made."

The final observation on this aspect of the case is that the transfer of the property to the trustee, and the deed of trust, must be considered as one transaction. As was stated in King et al. v. York Trust Co., 278 Pa. 141:

"The deed and declaration of trust, being parts of the same transaction, must be considered together . . . and prima facie constitute an irrevocable active trust. . . . It was within King's power as absolute owner to create such a trust . . . and the presumption is the deed and declaration were intended to accomplish their avowed purpose. The beneficiaries thereunder take as purchasers, not as legatees, the instruments not being testamentary."

Applying these principles to the present case, we are of the opinion that settlor, by the transfer of the trust res to his trustee, and by the trust deed, intended to divest himself of the legal title thereto. He vested his trustee with broad discretion as to management of the trust funds. He created an active trust for the benefit of himself and other living and ascertained persons. Time is not annexed to the gift to the wife and children of the settlor, their enjoyment being postponed only to let in preceding life estates. The children of settlor have vested interests in the trust fund, subject to be divested, and his grandchildren have contingent interests. He retained the right to alter the shares of all beneficiaries but himself, but he limited the exercise of this right to his will. The absence of spendthrift provisions does not affect settlor's right to revoke or terminate the trust. The trust is not testamentary in character and may not be revoked by settlor, even with the consent of his wife and children.

The *second reason* given for termination of the trust is that it *violates the rule against perpetuities.*

"A perpetuity is any limitation or condition which may take away or suspend the absolute power of alienation for a period beyond life or lives in being and twenty-one years thereafter. If there is a possibility that a violation of this rule may happen, the devise is void. It is void if persons, to take, may possibly not be ascertained before, or the contingency may happen after the expiration of life or lives in being at the creation of the interest and for twenty-one years and possibly nine months thereafter, or the expiration of twenty-one years after the creation of the interest (see Foulke on Perpetuities, page 185 et seq., and exception as to charities: Act of May 9, 1889, P. L. 173).

"The rule is to be applied after testator's intentions are discovered; its object is to defeat a manifest inten-

tion which is contrary to a well recognized policy of the law. . . .

"The rule against perpetuities has to do with future estates which, by possibility, may not become vested within the time prescribed by law; it applies only to future estates which are contingent, and has no application to vested estates": Lilley's Estate, 272 Pa. 143, 148, 150, referred to in Downey et al. v. Union Trust Co., 43 Dauph. 205, 209.

"The period prescribed by the rule begins to run from the date of the creation of the interest, and is to be computed from the date of the testator's death, in the case of wills, and from the date of the deed, in the case of a gift inter vivos": Foulke on Perpetuities, 200 §342, 41 Am. Jur. 64, §19; Lilley's Estate, supra.

The test is possibilities, not actualities. This is shown by the above case and by Warren's Estate, 320 Pa. 112, 113, where it is said:

"In cases of trusts created by a testator or settlor the validity of the disposition is governed by *possible* events, not necessarily by actual events as they may have happened to materialize."

Gauged by these standards, it can scarcely be doubted that there is a possibility that the provisions of the present deed of trust would violate the rule against perpetuities. At the time the deed was executed there were in existence five persons, each of whom was given a life estate. We will assume, for the purpose of illustration, that the three children died without issue, survived by settlor and his wife. Thereafter settlor dies, survived by his wife. She gives birth to a child one month after settlor's death, and dies in childbirth. This posthumous child would be entitled to the income of the whole trust estate for life. At the age of 21 years, said child would be entitled to one fourth of the corpus. At the age of 30 years (which is almost 9 years after the last life in being, plus 21 years), this child is

entitled to another one fourth of the corpus. The other one half of the corpus, distributable upon the death of said child, would go to his child or children, who may not be born until many years after the last life in being when the trust was created and 21 years thereafter.

Another illustration would be where the children of settlor predeceased him without issue. The wife of settlor then dies, and settlor remarries. To this second marriage, a child could be born. Settlor dies one month after the birth of this child. Thereafter the same result could follow as in our first illustration.

In both of these cases, the rule against perpetuities would be violated, both as to the child of settlor, and as to his grandchild. The "persons to take could not be ascertained before the expiration of a life or lives in being at the creation of the interest and for twenty-one years and possibly nine months thereafter," as stated in Lilley's Estate, supra. It is, also, obvious that the interests of such persons are contingent.

However, there is a well-known exception to the rule that violation of the rule against perpetuities is determined by possibilities and not by actualities. The exception relates to alternative limitations, one of which violates the rule and one of which does not. In such a case the invalid limitation does not avoid the valid one if the event happens upon which the valid one is contingent. This is made clear in Whitman's Estate, 248 Pa. 285, 290, where the rule is stated to be:

"The Pennsylvania rule is . . . that a valid limitation which is associated with, but practically possible of separation from, one that transgresses the rule against perpetuities, will not be struck down, unless the will as a whole not only shows the void limitation, but that the general scheme and dominant purpose of the whole disposition in question were to tie up the testator's estate beyond the time allowed by law; when such is the case, however, the provision falls in its

entirety. While the last part of this rule is freely criticized by some text writers, yet the cases cited . . . show it to be implanted in our law. . . ."

Additional authority for this proposition is found in Lippencott's Estate, 333 Pa. 48, 54; Griscom's Estate (No. 1), 336 Pa. 419, 421; Griscom's Estate (No. 2), 336 Pa. 422; and Sumner v. Westcott et al., Supreme Court of Errors of Connecticut, 86 Conn. 217, 84 Atl. 921.

Examination of the trust deed we are considering convinces us that it is possible and practicable to separate the valid and void provisions and that there is no general or dominant purpose to circumvent or violate the rule against perpetuities. The dominant purpose of settlor was to provide an income for himself for life, and following his death, to his wife and children for their respective lives. To date, there have been no afterborn children.

The Olmsted deed of trust may be said to contain three alternative limitations, to wit: (1) A gift to children in being and their issue; (2) a gift to afterborn children and their issue; and (3) in default of both of these groups, a gift to the next of kin of settlor under the intestate act.

Counsel for the trustee and the guardian and trustee ad litem take the position that (1) and (2) are separate limitations; and while (2) may violate the rule against perpetuities, (1) does not; and that consequently, the valid limitation is not avoided, the exception applying in such a case. As authority for this conclusion we have been referred to Holmes v. Connecticut Trust & Safe Deposit Co. et al., 92 Conn. 507, 103 Atl. 640. In that case a gift was made to a son for life, and after his death to two named children for life, with provision that should the son have more children born to him, that all his children should share alike. The court held that the gift to children in being and

the gift to children as a whole, including after-born children, were alternative provisions, and that though one be invalid, it does not affect the other which is valid. This case is quite similar to the one with which we are dealing.

Counsel for petitioner contends that provisions (1) and (2) constitute gifts to a class and not alternative limitations, and that consequently the exception to the rule does not apply. This pays no regard to alternative (3) which is effective upon failure of (1) and (2). Since no one could doubt that (3) is valid, it follows that the exception to the rule applies, and the trust will not now be struck down because one alternative may violate the rule against perpetuities.

Whitman's Estate, 248 Pa. 285, makes this quite clear. In that case testator gave an income to his wife for life, followed by a gift to his daughter for life. Upon the death of the daughter the trustee was to divide the corpus among her children, the shares of her male children to be paid to them when they became 21 years of age, and the shares of female children to be held "upon like trusts" as that for daughter, and upon death of such female grandchildren of testator to divide and pay over said share to and among their lawful issue or children. In default of children or issue surviving said daughter, the principal was given to certain charitable institutions.

At the time of testator's death, he was survived by his wife and daughter, the latter being married, but having no children. Testator's widow died and thereafter the daughter gave birth to a child. The daughter contended that the trust should be terminated and the corpus awarded to her on the theory that the trust violated the rule against perpetuities, that the whole limitation failed, and that an intestacy resulted. The opinion of the Supreme Court states, on pages 288 and 289:

"The Orphans' Court refused the contention, (of the daughter) saying that, even though the gift over to the children of testator's granddaughters was too remote, it was 'not at present concerned with the effect of this violation, as there is in existence a life estate (that of his daughter) which vested at his death'. The opinion then goes on to state: 'The general doctrine of all our cases is that the validity of a life estate or succession of life estates, at the death of the testator, or during a life or lives in being and 21 years thereafter, is not affected by reason of ultimate limitations which transgress the rule against perpetuities (Lawrence's Est., 136 Pa. 354; Goddard's Est., 198 Pa. 454; Gray on Perpetuities, Sec. 247-8) . . ., and this doctrine is recognized as the rule even where the wills under discussion were held to be exceptions to it (Johnson's Est., 185 Pa. 179; Gerber's Est., 196 Pa. 366; Kountz Est. (No. 1), 213 Pa. 390) ; in those cases the main and dominant purpose of the testators was to keep their estates entire beyond the lawful period, and the creation of the particular estates was merely a scheme to carry that purpose into effect. . . . A careful reading of the present will discloses that the creation of the . . . estates for his wife and daughter was . . . (the testator's) dominant purpose. . . . As we cannot see that . . . the unlawful provision (for his daughter's female off-spring and their issue) is the main and dominant purpose of his will, there is no reason why the present case should be treated as an exception to the general principle that life estates anterior to a void limitation should be upheld.'

"After considering the arguments presented by counsel for the appellants, we are not convinced of error. In addition to what has been so well stated by the court below, it is to be noted that the will contains a *limitation over*, on the death of the testator's daughter without children, *to several existing charities*, and

that this provision *is an alternative limitation not in any manner dependent upon the one for the testator's granddaughters* and their issue; therefore, even though it be conceded that the latter provision is void under the rule against perpetuities, this does not affect the limitation over (Stone v. Bradlee, 183 Mass. 165, 171). The text writers and authorities (English and American) seem to agree that where an independent limitation over upon the death of a life tenant without children follows a gift to such children, if any, and the gift to the children contains provisions which make it void under the rule against perpetuities, the limitation over is separable and will be given effect (Lewis on Perpetuity, p. 501; Seaver v. Fitzgerald, 141 Mass. 401, 403; Gray on Perpetuities, pp. 233, 236; Leak v. Robinson, 2 Merivale 363, 393; Evers v. Challis, 7 H. L. C. 530). Here, the provision for the charities stands by itself, ready to take immediate effect should the testator's daughter leave no children at her death, and this distinguishes the present case from Johnson's Est., Gerber's Est., Kountz's Est., supra, and Goggins' App., infra, relied upon by the appellants, and is sufficient to sustain the trust, at least, till the present life estate comes to an end." (Italics supplied.)

All of this comment by the Supreme Court is equally applicable to the Olmsted trust. We think that there is no difference between a trust created by will, and a trust created by deed, in this respect, although settlor be still living. In the first part of this opinion we have expressed our belief that immediate rights vested in certain persons, enjoyment only being postponed. The result is, that whether by will or by deed, the trust is active; that certain persons have rights thereunder; and that the legal consequences are the same.

It may be added that in the Olmsted trust the third alternative limitation to the next of kin of settlor would

involve collaterals, just as did the two wills in the Griscom cases, 336 Pa. 419 and 422.

Counsel for petitioner has stressed the fact that an alternate gift, to be valid, must not depend upon the same contingency which made the other invalid, and that where a contingency has a double aspect, the two aspects may not be considered separate contingencies.

The case of Proctor v. The Bishop of Bath, 2 Blackstone 358 (1794) would seem to support this conclusion. However, in this case *both* alternate gifts were held to violate the rule against perpetuities and *both* were held invalid. The court also held the one gift to be an executory devise and not a contingent remainder, there being no particular estate to support it. In both of these respects it differs from the case at bar.

In re Harvey, 39 Chancery Division 289 (1888), the question of alternatives was again involved, one being to the right heirs of testatrix. The gift was held bad, but the opinion states:

"If the limitation had been 'in case both my daughters shall die without leaving any child, or the issue of any child, living at the decease of the survivor of them' . . . then if the . . . event happened, the gift over would be good."

This is, in our judgment, almost precisely what the Olmsted deed of trust provides in paragraph 4(*g*). Furthermore, this decision seems to be in conflict with the decisions of our own Supreme Court, particularly the Whitman case, 248 Pa. 285, quoted above, and the two Griscom cases, supra. It is also in conflict with Holmes v. Connecticut T. & S. D. Co., supra, which involves children in being and after-born children as does the Olmsted trust. In choosing between conflicting authorities, we are obliged to follow our own law.

Hancock v. Watson, 1902 Appeal Cases 14, also held an alternate gift void for remoteness, but does not

seem to help us in the present case. It does state that the court will not split contingencies.

If we have interpreted these three cases correctly, in each instance the contingency relating to the first alternative gift had been established by *actualities* at the time the decision was made, and the *possibilities* were applied thereafter to the alternate gift.

To summarize the matter: the general rule in such cases is that the violation of the rule against perpetuities is tested by possibilities and not by actualities. But in the case of alternative limitations, one of which is valid, you judge by actualties and not by possibilities. Hence, in the present case, one alternative limitation being valid, and the actualities showing no violation of the rule, the trust may not be revoked or terminated at this time.

The third point stressed for our consideration is that the purpose of the trust has failed. This is upon the theory that the income from the investment has diminished, owing to economic circumstances, and is no longer sufficient to support settlor and his wife in the fashion to which they are accustomed. It is also alleged that the same thing applies to the children of settlor.

We will first observe that the deed of trust confers no benefits upon settlor's wife or children which they may enjoy before his death. In this respect the trust has not failed in its purpose.

In the second place, the trust corpus has been diminished by some $100,000 by withdrawals consented to by settlor, his wife and children. This in turn affected income by reducing invested capital and helped bring about the result complained of.

In the third place, settlor being at present the only one entitled to receive income, and the corpus now amounting to some $421,000, it can scarcely be contended that the income is de minimis and that the purpose of the trust has completely failed.

In our opinion the purpose of the trust has not failed. On the contrary, revocation of the trust would bring about a failure of the purpose of the trust, by eliminating the provisions for income to the wife for life, and for the children for their lives. There would be no assurance, in the case of revocation, that these purposes would be continued by settlor. At least he would not be obliged to do so.

It must not be forgotten that the present petition is not joined in by *all* the interested parties. Some are not sui juris and some are not presently ascertained. Hence, this is not a case where all interested parties have joined in the petition and where no purpose exists which requires the continuance of the trust.

A number of additional arguments have been advanced by counsel for our consideration. Among these is one that the deed of trust provides an integrated plan, the purpose of which would fail if any part thereof is held to be ineffective. It is also contended that the antecedent estates, for this reason, may not be sustained. In view of what we have already said, and the conclusions we have reached, we do not deem it necessary to discuss these additional arguments, as, in our opinion, they are not controlling.

However, notwithstanding all this, we are somewhat sympathetic with settlor in his present reduced circumstances, which have resulted from causes which he could not reasonably be expected to foresee. Upon proper application we would consider appropriate means of ameliorating his unhappy condition and increasing the funds available for the proper support of himself and wife, if the same may lawfully be done.

Petitioner's counsel has presented requests for findings of fact and conclusions of law. In a case such as this, we do not deem it necessary to comply with the request or to make findings or conclusions of our own.

Such as are necessary are given in the course of the opinion.

### Decree

And now, to wit, August 4, 1947, the petition to revoke or terminate the trust created by settlor, Robert A. Olmsted, is dismissed. The record costs shall be paid by him. Counsel fees for the guardian and trustee ad litem, as hereafter fixed by the court, shall be charged against the trust fund.